UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

ESTELLA BRIZINOVA and
EDWARD SOSHKIN,
*aka* EDUARD SOSHKIN,

Debtors.
----------------------------------------------------------------x
ROBERT L. GELTZER, CHAPTER 7
TRUSTEE OF THE ESTATE OF ESTELLA
BRIZINOVA AND EDWARD SOSHKIN,

Plaintiff,

-against-

ESTELLA BRIZINOVA and
EDWARD SOSHKIN,

Defendants.
----------------------------------------------------------------x

Chapter 7

Case No. 12-42935-ess

Adv. Pro. No. 15-01073-ess

**MEMORANDUM DECISION ON MOTION FOR CONTEMPT AND SANCTIONS
AGAINST KARAMVIR DAHIYA, ESQ., AND/OR DAHIYA LAW OFFICES, LLC**

Appearances:

Robert L. Geltzer, Esq.
Law Offices of Robert L. Geltzer
1556 Third Avenue (Suite 505)
New York, NY 10128

Karamvir Dahiya, Esq.
Dahiya Law Offices, LLC
75 Maiden Lane (Suite 506)
New York, NY 10038
  *Attorneys for Estella Brizinova and
  Edward Soshkin*

Robert A. Wolf, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway (11th Floor)
New York, NY 10018
  *Attorneys for Robert L. Geltzer, as
  Chapter 7 Trustee of the Estate of
  Estella Brizinova and Edward Soshkin*

HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

## Introduction

Before the Court is the motion of the Chapter 7 Trustee Robert L. Geltzer for contempt

and sanctions against Karamvir Dahiya, Esq., and Dahiya Law Offices, LLC (together,

"Dahiya"), in an adversary proceeding brought in the bankruptcy case of Estella Brizinova and

Edward Soshkin.  The Trustee commenced this adversary proceeding against the Debtors to

recover certain assets from them for the benefit of their bankruptcy estate.

As this Court has observed before, "the prospect of imposing sanctions against a

professional is never pleasant for the parties or the court."  *Kramer v. Mahia (In re Khan)*, 488

B.R. 515, 521 (Bankr. E.D.N.Y. 2013), *aff'd sub nom. Dahiya v. Kramer*, 2014 WL 1278131

(E.D.N.Y. Mar. 27, 2014), *aff'd*, 593 F. App'x 83 (2d Cir. 2015).  As this Court has also found:

> Some of the most important precepts of the legal profession are in the
> background, and occasionally the foreground, of a request for this relief.  As
> Chief Judge Irving Kaufman noted some thirty years ago, "advocacy is an art in
> which the unrelenting pursuit of truth and the most thorough self-control must be
> delicately balanced," and "zealous advocacy in behalf of a client can never excuse
> contumacious or disrespectful conduct."  *Van Iderstine Co. v. RGJ Contracting
> Co.*, 480 F.2d 454, 459 (2d Cir. 1973).

*Id.*  And as the Second Circuit has noted, "[c]ourts can adjudicate disputes only when the parties

present reasoned arguments rather than invective-laden diatribes."  *Koehl v. Greene,* 424 F.

App'x 61, 62 (2d Cir. 2011).

The Trustee seeks contempt and sanctions against Dahiya in response to five statements

in the Defendants' Motion to Dismiss this adversary proceeding, on grounds that they are highly

objectionable and offensive.  These statements are:

> Geltzer having realized that he has gotten money from the sons, he could extract
> more, he has begun his extortionist journey again.

> [A]s stated earlier, trustee wants to threaten a family into further submission.
>
> They had sued the sons and settled with them.  Seeing the promptness of the settlement Geltzer has to devise ways to reach deeper to extort more settlement.
>
> This Trustee Robert Geltzer, has been known to never file an estate closure reports on an expeditious basis but for keeping it open.  Why?  Unexpected accretion!
>
> Geltzer brought a lawsuit against the sons of the debtors, Nick Soshkin and Igor Soshkin on grounds very frivolous . . . . This settlement, became a source of inspiration to Geltzer to dig more.

Mot. to Dismiss at 8, 9, 12, 16, 20.  *See* Sanctions Mot. at 6-7 (the "Statements").

The Trustee also seeks contempt and sanctions against Dahiya in response to a statement in the Defendants' Reply Memorandum in further support of the Motion to Dismiss, on grounds that it is an impermissible disclosure of a statement made during a mediation in *Geltzer v. Ng* (*In re Ng*), Case No. 12-01343-CEC, another bankruptcy case in which he served as the Chapter 7 trustee and Dahiya represented the debtor.  That statement is that the settlement in *In re Ng* "was an Agreement, that was signed only on the basis of being urged with the words: 'Sometimes, it takes a stronger person to walk away.'  I decided to walk away."  Sanctions Mot. at 13.

## Jurisdiction

This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  And this Court has constitutional authority to enter a final order, because the Trustee's requests for relief stem from these proceedings and "from the bankruptcy itself."  *Stern v. Marshall*, 564 U.S. 462, 499 (2011).  For these reasons, this Court has jurisdiction and the authority to consider and enter a final order on the relief sought here under 28 U.S.C. § 1334(b) and the Standing Order of

Reference dated August 28, 1986, as amended by Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.

### Background

*This Adversary Proceeding*

By this action, the Chapter 7 Trustee seeks to recover certain assets from the Defendants, who are also the Debtors in this bankruptcy case, for the benefit of this Chapter 7 estate. This is not the Trustee's first action to recover assets in this bankruptcy case – the Trustee brought a prior case, *Geltzer v. Soshkin*, Adv. Pro. No. 14-01040, against the Defendants' sons in March 2014, and this Court approved the settlement of that action later that year.

In this action, the Defendants moved to dismiss the Complaint, and that motion prompted both opposition from the Trustee and this Motion for Contempt and Sanctions (the "Sanctions Motion"). The Defendants' Motion to Dismiss was granted in part and denied in part by Memorandum Decision and Order dated July 20, 2016. The Trustee declined to replead the claim that was dismissed, and the Defendants have answered the Complaint. But this motion remains to be decided by the Court.

*This Motion for Contempt and Sanctions*

By this motion, the Trustee argues that Dahiya should be held in contempt pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rules 9014 and 9020 for two reasons. First, he seeks an order of civil contempt or coercive sanctions on grounds that by making the Statements in the Motion to Dismiss, Dahiya violated a stipulated order entered by Chief Judge Craig in *In re Ng* (the "*Ng* Stipulated Order"). And second, he seeks an order of contempt on grounds that

by disclosing a confidential mediation statement in the Reply Memorandum, Dahiya violated a mediation order entered by Chief Judge Craig in that action (the "*Ng* Mediation Order").

In addition, the Trustee argues that Dahiya should be sanctioned under Bankruptcy Code Section 105 and this Court's inherent authority, on grounds that the Statements and the disclosure of a confidential mediation statement violate the *Ng* Stipulated Order, the *Ng* Mediation Order, the Bankruptcy Code and Rules, this Court's Local Bankruptcy Rules, and the New York Rules of Professional Conduct.

The Trustee seeks an order (i) declaring that Dahiya has violated the *Ng* Stipulated Order, the *Ng* Mediation Order, the Local Bankruptcy Rules, and New York's Rules of Professional Conduct; (ii) sanctioning Dahiya for those violations; (iii) holding Dahiya in contempt of the *Ng* Stipulated Order and the *Ng* Mediation Order; (iv) imposing coercive civil *per diem* sanctions against Dahiya to compel compliance with those orders; and (v) imposing such other means to compel compliance as the Court deems necessary and appropriate.

### *The Trustee's Arguments*

The Trustee advances several arguments in support of his requests for contempt and sanctions. Some are based on the Statements made by Dahiya in the context of the Motion to Dismiss, and others are based on matters separate from this adversary proceeding and the Debtors' bankruptcy case.

At the outset, the Trustee notes that in the *Ng* Stipulated Order, "Dahiya reaffirms his commitment to practice in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this District . . . [and] the New York Rules of Professional Conduct," so that any violation of these authorities amounts to contempt of that order. Sanctions Mot. at 5.

The Trustee argues, in forceful terms, that by making the Statements, Dahiya violated the *Ng* Stipulated Order and several of New York's Rules of Professional Conduct. He characterizes those statements as "unjustified and scandalous personal attacks against me" and "unprofessional, ill-conceived, poorly written and baseless invective." Sanctions Mot. at 6. And he describes those statements and the Motion to Dismiss as "part of [Dahiya's] use and abuse of this Court and its otherwise lawful processes to wage a crusade against me, and not for the otherwise legitimate (though incorrect) position to try to dismiss this Adversary Proceeding." Sanctions Mot. at 7. "Then and now," the Trustee states, Dahiya has "*multiplied proceedings*," "behaved *unreasonably and vexatiously*," "*increased the costs* of the proceedings," and "*acted with bad faith* and with *intentional misconduct*." Sanctions Mot. at 7 (emphasis in original).

The Trustee also argues that Dahiya violated the *Ng* Mediation Order and the Local Bankruptcy Rules by disclosing a confidential mediation communication from the court-ordered mediation in *Geltzer v. Ng*. In particular, referring to the settlement stipulation in that case, the Trustee states that in the Reply Memorandum, "Dahiya improperly discloses that it 'was signed only on the basis of being urged with the words [of Judge/Mediator Stong]: Sometimes, it takes a stronger person to walk away. I decided to walk away.'" Sanctions Mot. at 13 (alterations in original).

In addition, the Trustee argues that Dahiya has engaged in a continuing and sanctionable course of conduct against him and other Chapter 7 trustees, and states that rather than conduct himself professionally, Dahiya "seeks to abuse them and show sheer and unmitigated disrespect for the legal system and this Court." Sanctions Mot. at 15. The Trustee points to other cases where he and other Chapter 7 trustees have sought sanctions against Dahiya, and observes:

-5-

> Dahiya has made it a point in the Eastern District of New York to embark on a course of *bad faith conduct by unreasonably and vexatiously multiplying proceedings*, and by suing panel trustees for alleged abuses of power. As a result of Dahiya's conduct, the costs of those litigations have increased, as have the burdens on the courts' calendars and the impositions on other attorneys and their clients and pro se debtors whose cases are delayed while the Courts read and listen to Dahiya spew legally meritless, and morally malicious and mendacious accusations.

Sanctions Mot. at 16 (emphasis in original).

The Trustee observes that in some of those situations, "sadly and regrettably, the Court did nothing then to deter Dahiya, and so he has continued his course of conduct." Sanctions Mot. at 16. And he notes that in others, bankruptcy courts and district courts have ordered sanctions against Dahiya, and directed him to "'seek assistance before taking on new clients and cases.'" Sanctions Mot. at 18 (citation omitted).

The Trustee argues that pursuant to Bankruptcy Code Section 105 and its inherent authority, this Court may sanction Dahiya for making the Statements. He points to four factors identified in *Grand Street Realty, LLC v. McCord*, 2005 WL 2436214 (E.D.N.Y. Sept. 30, 2005), that courts consider when a creditor impedes the administration of the assets of an estate, and suggests that similar factors should be considered here. In that context, courts look to:

> (1) whether the Chapter 7 trustee acted in good faith to pursue his statutory duties; (2) whether the response by the objecting party was made in good faith; (3) whether that party had an opportunity to correct its course but failed to do so; and (4) whether the Chapter 7 trustee or the bankruptcy estate was damaged by incurring unnecessary costs as a result of the objecting party's actions.

*Grand Street Realty*, 2005 WL 2436214, at *9.

And finally, for many of the same reasons, the Trustee argues that this Court may find Dahiya in contempt for his knowing violations of the *Ng* Stipulated Order, in which he agreed to conduct himself in accordance with the applicable provisions of the Bankruptcy Code and Rules,

-6-

Local Bankruptcy Rules, and Rules of Professional Conduct.  And he seeks prospective relief, on grounds that:

> Dahiya must be "refrained" from continuing to harass me and other trustees and from continuing to insult this Court by derogating its authority by his failure to comply with this Court's orders – indeed, at minimum, with one particular order – the [*Ng* Stipulated Order] – to which he has unequivocally and voluntarily agreed by his assenting signature thereon, and by his violations of the New York Rules of Professional Conduct.

Sanctions Mot. at 32.

*Dahiya's Response*

Dahiya opposes the Sanctions Motion.  He denies that he engaged in conduct that violated the *Ng* Stipulated Order, the *Ng* Mediation Order, or any applicable provisions of the Bankruptcy Code and Rules, Local Bankruptcy Rules, or Rules of Professional Conduct.

With respect to the *Ng* Stipulated Order, Dahiya states, among other things, that he reaffirmed his commitment to practice with all of the applicable standards, including the standard that "[l]awyers should be courteous and civil in all professional dealings with other persons."  Sanctions Opp. at 4.  He notes that "we reaffirm [those standards] every minute and day that we practice.  It is something that is expected with or without reaffirmation that one is 'courteous and civil.'"  Sanctions Opp. at 4.

With respect to the Statements identified by the Trustee, Dahiya questions whether a properly made motion to dismiss under Rule 12(b)(6) can be a sanctionable multiplication of litigation.  He argues that sanctioning a defendant for bringing a motion to dismiss would "definitely chill[] advocacy."  Sanctions Opp. at 5.  He characterizes the Motion to Dismiss as "thoughtful," and the statements it contains as "relevant."  Sanctions Opp. at 5, 7.  And Dahiya

asserts that the Trustee "fails to relate" the language in the Statements to conduct that is sanctionable. Sanctions Opp. at 6.

In addition, Dahiya responds that the Trustee does not show that he acted with any "serious and studied disregard for the orderly process of justice." Sanctions Opp. at 5. He asserts that the Trustee does not provide any support for his claim that by making the Statements in the Motion to Dismiss, Dahiya violated New York's Rules of Professional Conduct. Rather, he states, the Trustee "highlights and underlines words, but does not relate again to anything concrete." Sanctions Opp. at 6. And he observes that the Trustee does not "relate any of his quotation with any conduct, which would attract such a provision." *Id.*

Dahiya also defends the particulars of the Statements as both accurate and relevant to these proceedings. For example, he states:

> [T]here is nothing in the Five Statements which would violate [Rule 3.4(d)(1)]. All statements in the pleadings, motions, etc. are relevant. We feel and it is justifiable looking into the circumstances that the underlying lawsuit is a result [of] gross negligence and is a extortionist move by the trustee. The trustee wakes up now after 3 years to claim something on a baseless pleading and corner the family into a threatened situation with the lawsuit, of course it is nothing but extortionist lawsuit.

Sanctions Opp. at 7.

Dahiya questions whether this Court is able to issue an order of contempt. He notes:

> Bankruptcy Courts as auxiliary to article III, do not have clear power under "inherent powers" as those vested with a plenary court, for redress as the business is sent to them by virtue of referral under 28 U.S.C. § 157(a). However, contempt takes a different hue. It is a product of a plenary Court and it arises out of such plenary Court's inherent powers.

Sanctions Opp. at 12.

Dahiya also questions whether the Trustee has established that he and his firm acted in bad faith.  He notes that the Trustee uses "the words of bad faith . . . [b]ut fails to show how our assertions are a bad faith, how the motion to dismiss, a bad faith."  Sanctions Opp. at 14.  He observes that the standard of proof for assessing bad faith is clear and convincing evidence, and that as counsel, he was guided by "the principles of law and zealousness to safeguard the client's interest and righteousness.  More than that it is the dignity of the process that is at stake here with the Trustee clearly abusing his powers."  Sanctions Opp. at 15.

*The Trustee's Reply*

In reply, the Trustee argues, again in strident terms, that Dahiya "doubled down" and ratified the Statements by repeating them in his opposition submission, including his statements that the Trustee's conduct amounts to extortion.  Sanctions Reply at 2.  He also states that Dahiya "has continued to act like a 'loose cannon' firing off ad hominem attacks in his pleadings in bad faith," that his "arrogance and bad faith show no bounds," and that he "'just doesn't get it.'"  Sanctions Reply at 4.  He disputes Dahiya's characterization of the process and outcome of several other bankruptcy cases in which he served as Chapter 7 trustee, and sharply criticizes Dahiya's descriptions of those matters.

The Trustee similarly disputes Dahiya's legal arguments, and characterizes them as "ludicrous," "sheer and unadulterated gibberish," and the like.  Sanctions Reply at 15-16.  He states that "it almost appears that Dahiya has not read, at least not completely, any one of the cases that he cited," and explains in considerable detail why the case law supports his position, and not Dahiya's.  Sanctions Reply at 16-25.  In particular, the Trustee emphasizes that the

bankruptcy court plainly has the authority to consider, and if appropriate, to grant, an award of sanctions and contempt such as he seeks here. *Id.*

## The Applicable Law

The Trustee looks to several sources of authority and standards in his request for an award of sanctions against Dahiya. These include Bankruptcy Code Section 105 and the Court's inherent authority, the Local Bankruptcy Rules, this District's Local Civil Rules, and New York's Rules of Professional Conduct. And in his application for a finding of contempt, the Trustee points to the terms of the *Ng* Stipulated Order and the *Ng* Mediation Order. The Court considers each of these in turn.

### *Bankruptcy Code Section 105 and the Court's Inherent Authority*

Bankruptcy Code Section 105(a) permits a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. It also permits the court to, "*sua sponte*, [take] any action or [make] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105.

The Second Circuit has held that Section 105(a) empowers courts to "exercise equity in carrying out the *provisions* of the Bankruptcy Code." *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 184 (2d Cir. 2005). That is, Section 105(a) is an important tool for courts and parties in the bankruptcy process, but it does not, standing alone, provide a basis for courts to issue sanctions or other relief. Rather, it permits the bankruptcy court to issue those orders that may be required in the context of a bankruptcy case as necessary to "carry[] out the provisions of the Bankruptcy Code." *Id.*

In the sanctions context, this Court's inherent authority supplies the necessary complement to Bankruptcy Code Section 105. As the Supreme Court has observed, courts are "'vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (*quoting Anderson v. Dunn*, 6 Wheat. 204, 227 (1821)). As a respected commentator has observed, "[t]his inherent authority is essential to the administration of justice, and exists in addition to sanctions available under specific statutes or Rules." 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 1690 (3d ed. 2012).

The Second Circuit has similarly found that a "court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (quoting *Chambers,* 501 U.S. at 43). Sanctions are appropriate under a court's inherent power "where the attorney has acted in bad faith in the actions that led to the lawsuit or in the conduct of the litigation." *Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001). And courts agree that the attorney's bad faith is the central question to be addressed. *See, e.g., Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (applying 28 U.S.C. § 1927 to conclude that sanctions under that statute "must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power").

And the Supreme Court has made clear that the bankruptcy court has the authority to impose sanctions based on its inherent authority. As the Supreme Court has observed, a bankruptcy court "'may also possess 'inherent power . . . to sanction abusive litigation

practices.'" *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375-76 (2007).

*The Local Bankruptcy Rules*

Local Bankruptcy Rule 9019-1(l) addresses confidentiality in the context of a court-ordered mediation, and provides:

> Any oral or written statements made by the mediator, the mediation participants, or others during the mediation process shall not be disclosed by any of the mediation participants, their agents, or the mediator, except that such statements may be disclosed to a Judge designated to hear a matter under subdivision (e) of this rule.  Matters not to be disclosed include, without limitation:
>
> (i)     views expressed or suggestions made by a participant with respect to a possible settlement of the dispute;
>
> (ii)    whether a participant indicated a willingness to accept a proposal for settlement made by the mediator;
>
> (iii)   proposals made or views expressed by the mediator;
>
> (iv)    statements or admissions made by a participant . . .

Nondisclosure of mediation communications is fundamental to the mediation process. The rule preserves the confidentiality of all statements in the mediation process, including the views and suggestions of the mediation participants with respect to possible pathways to a settlement, any settlement proposals advanced by a party or the mediator, and whether a mediation participant was willing to accept a mediator's proposal.  Communications of this nature must be protected from disclosure in order to permit an open and candid process, in much the same way that Federal Rule of Evidence 408 generally excludes from evidence "conduct or a statement made during compromise negotiations about [a] claim."  Fed. R. Evid. 408(a)(2).

This nondisclosure requirement does not, of course, immunize information from disclosure that is otherwise required by law or by the litigation process.  For example, information that must be produced in response to an appropriate discovery request does not become exempt from disclosure simply because it may have also been disclosed in a mediation.  But the settlement statements, views, and positions expressed and the settlement proposals made in a mediation are in a different category.

Courts recognize that this precept of confidentiality is a hallmark of the mediation process, because it permits the parties to seek a mutually beneficial, interests-based outcome without fear of compromising a litigation position if the mediation is unsuccessful.  As the Second Circuit observed in *Savage & Assocs. v. K & L Gates LLP (In re Telegent)*, 640 F.3d 53 (2d Cir. 2011), many alternative dispute resolution standards "recognize[] the importance of maintaining the confidentiality of mediation communications" because "[c]onfidentiality is an important feature of the mediation and other alternative dispute resolution processes.  Promising participants confidentiality in these proceedings 'promotes the free flow of information that may result in the settlement of a dispute.'" *In re Telegent*, 640 F.3d at 57-58 (quoting *In re Grand Jury Subpoena*, 148 F.3d 487, 492 (5th Cir. 1998)).

*The SDNY-EDNY Local Civil Rules*

Attorneys appearing in the courts in this district "must abide by the . . . New York State Rules of Professional Conduct" pursuant to Rule 1.3 of the Joint Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York.  *Azkour v. Haouzi*, 2012 WL 4832811, at *4 (S.D.N.Y. Sept. 28, 2012).

Local Civil Rule 1.5(b) addresses discipline of attorneys, and provides that the appropriate forum for hearing and determining whether a disciplinary violation has occurred is the District Court's Committee on Grievances.  Local Civil Rule 1.5 also provides that "in the interests of comity and predictability," and absent binding authority, the court will "give due regard to decisions of . . . New York State courts."  The Committee on Grievances may impose discipline after notice and an opportunity to respond, if it is shown that, among other things, "[an] attorney is found to have engaged in conduct violative of the New York State Rules of Professional Conduct."  Local Civil Rule 1.5(b)(5).

<u>New York's Rules of Professional Conduct</u>

New York's Rules of Professional Conduct (the "NY RPC"), which are found at 22 NY CRR §§ 1200 *et seq.*, set standards for attorney conduct in this state.  These Rules are also incorporated by reference as a source of standards for attorney conduct in this District's Local Civil Rules.  And it is well established that "[b]ankruptcy courts in New York apply New York's Code of Professional Responsibility to ethical disputes."[1]  *In re Bruno*, 327 B.R. 104, 108 (Bankr. E.D.N.Y. 2005) (citing *Kittay v. Kornstein*, 230 F.3d 531, 538 (2d Cir. 2000)).

The Rules of Professional Conduct are enforced in each of New York's four Appellate Divisions by grievance committees established for that purpose, and those committees determine the procedures for handling grievances against attorneys who practice in each department.

---

[1]  The Disciplinary Rules of the Code of Professional Responsibility were superseded by New York's Rules of Professional Conduct effective April 1, 2009.

<u>New York Rule of Professional Conduct 3.1</u>  NY RPC 3.1 establishes the framework for professional discipline when an attorney asserts a meritless claim or contention.  Rule 3.1 provides:

> (a)  A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous. . . .
>
> (b)  A lawyer's conduct is "frivolous" for purposes of this Rule if:
>
> > (1)  the lawyer knowingly advances a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law;
> >
> > (2)  the conduct has no reasonable purpose other than to delay or prolong the resolution of litigation, in violation of Rule 3.2, or serves merely to harass or maliciously injure another; or
> >
> > (3)  the lawyer knowingly asserts material factual statements that are false.

Courts have approved discipline for violations of NY RPC 3.1 based on a lawyer making "multiple derogatory and unprofessional attacks upon the personal attributes" of another attorney.  *In re Raskin*, 217 A.D.2d 187, 189 (2d Dep't 1995) (applying the Code of Professional Responsibility).  The court characterized the statements as "unprofessional and vituperative personal attacks . . . in court documents."  *In re Raskin*, 217 A.D.2d at 189-90.

Courts also have been asked to consider discipline for violations of Rule 3.1 where a lawyer engaged in frivolous conduct.  One court noted that in this context, "frivolous conduct includes circumstances 'where the lawyer knowingly advances a claim . . . that is unwarranted under existing law.'"  *Pullman v. Alpha Media Publ'g, Inc.*, 2012 WL 3114939, at *4 (S.D.N.Y. July 31, 2012) (quoting NY RPC 3.1).  In declining to disqualify or discipline counsel under this Rule, the court noted:

> In short, [the plaintiff] fails to establish a nexus between [the defendant's] alleged misconduct and the matter presently before the Court. Furthermore, the plaintiff does not cite – and the Court has not found – any case where an attorney has been disqualified from a particular action because of a violation of Rules 3.1 or 3.3 in a previous one. The proper forum to address violations of the Rules of Professional Conduct is a federal or state bar disciplinary proceeding.

*Pullman*, 2012 WL 3114939, at *5.

Another court applied the Professional Conduct Rules pursuant to the Local Civil Rules and noted, in declining to refer the attorney to the District Court's Committee on Grievances, that "[a] violation of . . . Rule 3.1 occurs when an assertion of material fact is made that is false," but concluded that one of the statements at issue, expressed in a letter to the court, that the defendants' counsel had "no knowledge whatsoever, of the basic principles of the common law," was an attorney's expression of his opinion, and in any event not "an assertion of a 'material fact.'" *Azkour*, 2012 WL 4832811, at *5 (quoting *Pullman*, 2012 WL 3114939, at *4).

New York Rule of Professional Conduct 3.2  NY RPC 3.2 addresses litigation delay, and provides that "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to delay or prolong the proceeding or to cause needless expense."

In a proceeding before the District Court's Committee on Grievances, the committee issued a public reprimand of an attorney on grounds that he violated NY RPC 3.2. The committee concluded that the attorney had delayed or prolonged litigation and caused "needless expense" where he did not comply with court-ordered deadlines or appear at scheduled court conferences, and did not adequately investigate a matter before bringing suit. *In re Gluck*, 114 F. Supp. 3d 57, 60 (E.D.N.Y. 2015).

New York Rule of Professional Conduct 3.3  NY RPC 3.3 applies to conduct before a tribunal, and provides:

(a)     A lawyer shall not knowingly:
    (1)     Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
. . .
(f)     In appearing as a lawyer before a tribunal, a lawyer shall not:
. . .
    (2)     Engage in undignified or discourteous conduct.

A knowing, false, and material statement of fact or law to a tribunal is an affront to the legal profession and the justice system, and such statements have led to discipline for violations of NY RPC 3.3(a)(1).  For example, in *In re Coyne*, 136 A.D.3d 176 (1st Dep't 2016), reciprocal discipline was imposed where an attorney made false statements to the court with respect to his representation of the plaintiff in a case, failed to provide an adequate explanation for other statements that he made, and belatedly created a retainer agreement and backdated it.  *In re Coyne*, 136 A.D.3d at 177-78.  A disciplinary violation was also found to be warranted where an attorney caused her client to sign "fraudulent promissory notes and false certifications which [she] then filed with the court."  *In re Lowell*, 14 A.D.3d 41, 45 (1st Dep't 2004).

More generally, courts, counsel, and parties are entitled to expect that a threshold level of decorum will always apply in court proceedings.  This Court's Civility Standards require no less, and "encourage lawyers . . . to observe principles of civility and decorum, and to confirm the legal profession's . . . status as an honorable and respected profession where courtesy and civility are observed as a matter of course."  United States Bankruptcy Court for the Eastern District of New York, Administrative Order No. 568, Adoption of New York State Standards of Civility, http://www.nyeb.uscourts.gov/content/568-adoption-new-york-state-standards-civility.

Attorneys have been disciplined for violations of NY RPC 3.3(f)(2) based on undignified or discourteous conduct where the attorney, after receiving an unfavorable ruling, "accused the

-17-

court and its clerk of prejudice and racism, and made other insolent, disrespectful remarks." *In re Hayes*, 7 A.D.3d 108, 109 (1st Dep't 2004). A violation of NY RPC 3.3's proscription was also found where an attorney "characteriz[ed] opposing counsel as a 'pimp' and stat[ed] a desire, thwarted only by age, to 'beat the living daylights' out of counsel." *In re Pollack*, 238 A.D.2d 1, 5 (1st Dep't 1997).

New York Rule of Professional Conduct 3.4  NY RPC 3.4 addresses fairness to opposing parties and counsel, and states:

> A lawyer shall not:
> (a)    (6)    knowingly engage in other illegal conduct or conduct contrary to these Rules;
> . . .
> (c)    disregard or advise the client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but the lawyer may take appropriate steps in good faith to test the validity of such rule or ruling;
> (d)    in appearing before a tribunal on behalf of a client:
> (1)    state or allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence;
> . . .
> (3)    assert a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused but the lawyer may argue, upon analysis of the evidence, for any position or conclusion with respect to the matters stated herein;
> . . .
> (e)    present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter.

Findings of disciplinary violations of NY RPC 3.4 have been made where an attorney improperly interjected his own view of the facts during a personal injury trial (*Valenzuela v. City of New York*, 59 A.D.3d 40, 44 (1st Dep't 2008)), and where an attorney disregarded orders directing her to make certain payments (*In re Nash*, 135 A.D.3d 159, 160 (1st Dep't 2015)).

Few courts have addressed the application of NY RPC 3.4(e)'s proscription against the use of baseless threats of criminal charges to gain an advantage in a civil action.  In describing the rule, one court observed that "'when a lawyer threatens to present criminal charges unless an action is taken which remedies a civil wrong, a presumption is likely to arise that [NY RPC 3.4(e)] has been violated.'"  *United States v. Huntress*, 2015 WL 631976, at *22 (W.D.N.Y. Feb. 13, 2015) (quoting *New York Bar Ass'n Comm. on Prof'l Ethics Op. No. 722*, 2003 WL 23099784, at *7 (Nov. 14, 2003)).  The court also noted:

> Significantly, this rule "does not prohibit all threats to present criminal charges; it prohibits only those that are made 'solely to obtain an advantage in a civil matter.'  For that reason, ethics opinions and court decisions in other jurisdictions have found no violation . . . when the threat of presenting criminal charges is intended for a purpose other than obtaining an advantage in a civil matter."

*Huntress*, 2015 WL 631976, at *22 (quoting *New York Bar Ass'n Comm. on Prof'l Ethics Op. No. 722*, 2003 WL 23099784, at *6).

New York Rule of Professional Conduct 8  NY RPC 8.4 addresses misconduct by an attorney and provides:

> A lawyer or law firm shall not:
>
> (a)  violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> . . .
> (c)  engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
> (d)  engage in conduct that is prejudicial to the administration of justice.

Comment 1 to this Rule explains that "[l]awyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct . . . ."  Comment 2 explains that "[m]any kinds of illegal conduct reflect adversely on fitness to practice law.  Illegal conduct involving violence, dishonesty, fraud, breach of trust, or serious interference with the

-19-

administration of justice is illustrative of conduct that reflects adversely on fitness to practice law."

Discipline based on a violation of NY RPC 8.4 was approved where an attorney knowingly hired a disbarred attorney to solicit and provide legal services to his clients. *In re Weber*, 134 A.D.3d 13, 16 (2d Dep't 2015). Similarly, discipline in the form of suspension was imposed based on a violation of this Rule where an attorney exerted undue influence over his client in an attempt to acquire an interest in her bank account and other assets. *In re DeSousa*, 36 A.D.3d 121, 122 (2d Dep't 2006).

## **Discussion**

### *The Trustee's Request for an Order Finding Dahiya in Contempt of the Ng Stipulated Order and the Ng Mediation Order*

The Trustee argues that pursuant to the *Ng* Stipulation approved and so-ordered by Chief Judge Craig, Dahiya reaffirmed his commitment to practice in accordance with the Bankruptcy Code and Rules, the Local Bankruptcy Rules, the Professional Conduct Rules, and the Court's Civility Standards. The Trustee notes that this includes the standard that "[l]awyers should be courteous and civil in all professional dealings with other persons," including Dahiya's professional dealings with him. Sanctions Mot. at 5. The Trustee also argues that because the Stipulation was approved by Chief Judge Craig, Dahiya violated an order of this Court when he made the Statements. Sanctions Mot. at 6.

Dahiya responds, in substance, that he has not violated an order of this Court, the Stipulation, the Bankruptcy Code and Rules, the Local Bankruptcy Rules, or the Professional Conduct Rules. He asserts that he made the Motion to Dismiss thoughtfully, and that the Statements are relevant to the relief that is sought there.

As a threshold matter, the Court must determine whether this is the proper forum to consider the question of whether Dahiya violated the *Ng* Stipulated Order and *Ng* Mediation Order entered by Chief Judge Craig.  The general rule in this Circuit and elsewhere is that a "violation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred."  *Stiller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963).  As another court of appeals found, "it is the court whose judgment or order has been defied which must try the contempt and pronounce judgment."  *Dunham v. United States*, 289 F. 376, 378 (5th Cir. 1923).  And as a district court observed, "[w]hen an individual is in contempt, he or she has been found in violation of a court order.  The Court that issues the order that was violated is the Court that determines whether a person is in contempt."  *Bessette v. Avco Fin. Servs., Inc.*, 279 B.R. 442, 449 (D.R.I. 2002).

This rule makes sense, for several reasons.  It promotes clarity and predictability.  This is because an order, unlike a statute, arises in the context of a particular case and is best interpreted and applied by the judge him or herself, within the context of that case.  It also promotes judicial economy.  It is hard to imagine the quantity of motion practice that could be unleashed if *every* order in *every* case could be enforced in *any other* case.  And for many of the same reasons, this rule helps to reduce the risk of inconsistent results that might flow from a limitless number of judges interpreting and applying a court's order in unrelated proceedings.

That is not to say that it is never appropriate for one judge to enforce an order that was entered by another judge in a different case.  For example, in the bankruptcy context, courts may distinguish between whether they are asked to enforce a "purely statutory order" such as the automatic stay contained in Bankruptcy Code Section 362 or the discharge injunction set forth in

Bankruptcy Code Section 524, on the one hand, and an injunction "individually crafted by the bankruptcy judge," on the other. *Beck v. Gold Key Lease (In re Beck)*, 283 B.R. 163, 169 (Bankr. E.D. Pa. 2002). And sometimes it may not be feasible for the parties to return to the courtroom of the issuing judge.

Here, the Trustee seeks a determination that Dahiya has violated the *Ng* Stipulated Order and the *Ng* Mediation Order, and a finding of contempt based on those violations. Those orders were entered by Chief Judge Craig, and the record does not show why the general rule that a "violation of an injunctive order is cognizable in the court which issued the injunction" should not apply. *Stiller*, 324 F.2d at 628. That is, the Trustee may seek redress for these asserted violations of the *Ng* Stipulated Order and the *Ng* Mediation Order from Chief Judge Craig, in the case in which those orders were entered, and not here.

For these reasons, and based on the entire record, to the extent that this motion seeks an order of contempt for violations of the *Ng* Stipulated Order and the *Ng* Mediation Order, it is denied without prejudice to a request for such relief in the case in which those orders were entered.

### *The Trustee's Request for an Order Sanctioning Dahiya Pursuant to Section 105 and the Court's Inherent Authority*

The Trustee argues that by making the Statements, Dahiya violated this Court's Local Bankruptcy Rules and New York's Rules of Professional Conduct. He urges that Dahiya should be sanctioned for these violations pursuant to the Court's inherent authority, including by coercive *per diem* sanctions, and that Bankruptcy Code Section 105 and Bankruptcy Rules 9014 and 9020 provide the framework for such relief.

Dahiya responds, in substance, that although the Supreme Court has stated that a bankruptcy court "may possess 'inherent power . . . to sanction 'abusive litigation practices,'" this does not address a bankruptcy court's inherent power to impose sanctions under Bankruptcy Code Section 105, and he questions whether that authority exists. Sanctions Opp. at 12 (quoting *Law v. Siegel*, 134 S. Ct. at 1194). He also disputes that any relief is appropriate.

At the outset, Section 105, entitled "Power of the Court," states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As noted above, the Second Circuit has stated that "[t]he court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Revson*, 221 F.3d at 78 (quoting *Chambers*, 501 U.S. at 43). Similarly, a district court has noted that in the context of a request for sanctions, the statutory language "necessary or appropriate" has been "construed . . . to mean that Section 105(a) must be exercised in furtherance of specific provisions of the code." *Grand Street Realty*, 2005 WL 2436214, at *4.

And as this Court noted in *Vehifax Corp. v. Georgilis (In re Tires R Us Ltd.)*, 2016 WL 3475204, at *8 (Bankr. E.D.N.Y. June 17, 2016), "[i]t has long been recognized that a bankruptcy court has the inherent authority to supervise the proceedings that take place before it. This authority includes the ability to impose sanctions on [attorneys] that appear before it." As another court observed, "'Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct.'" *In re Green*, 422 B.R. 469, 473 (Bankr. S.D.N.Y. 2010) (quoting *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir.

1996)).  *See Dahiya v. Kramer*, 2014 WL 1278131, at *3 (rejecting the argument that a court's inherent authority to impose sanctions may be exercised by Article III judges only).

That is, under the Bankruptcy Code and controlling Second Circuit precedent, this Court plainly has "the inherent authority to supervise the proceedings that take place before it" and, as part of that authority, the ability to impose sanctions when necessary.  *In re Tires R Us Ltd.*, 2016 WL 3475204, at *8.  That authority, while rarely to be invoked, is fundamental to the dignity and function of this or any other court.

The standard for imposing sanctions pursuant to the court's inherent authority is appropriately high.  In *Revson*, the Second Circuit concluded that "'[t]o impose sanctions under either [28 U.S.C. § 1927 or the court's inherent] authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes.'"  *Revson,* 221 F.3d at 79 (quoting *Agee v. Paramount Commc'ns Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)).

And as noted above, the attorney's bad faith is the central question to be addressed.  *See, e.g., Wilder*, 258 F.3d at 130; *Oliveri*, 803 F.2d at 1273.  As the district court in *Grand Street Realty* observed in a different context, in affirming the imposition of sanctions on a creditor who impeded a Chapter 7 trustee in his investigation into potential estate assets, "in order to impose sanctions pursuant to its inherent powers, a court must find that the party to be sanctioned acted without a colorable basis and in bad faith."  *Grand Street Realty*, 2005 WL 2436214, at *8.

Here, the record shows that the Statements contain strong and provocative labels and descriptions, including "extortionist," "threaten into further submission," "unexpected accretion," "frivolous," and "dig more."  That language is plainly emotion-laden and it commands attention,

-24-

though whether it amounts to effective advocacy is a different question.  Such rhetorical embellishment generally does not enhance, and may well detract from, the quality of the argument that is being advanced.

But the Trustee has not established by clear evidence that Dahiya acted in bad faith in employing such strident words, or that his conduct was entirely meritless and undertaken for improper purposes.  At most, the record shows that Dahiya moved to dismiss the Complaint not only because it fails to state a plausible claim, but also because it was – in Dahiya's view – an abuse of the Trustee's authority in managing these Debtors' Chapter 7 cases.  And he advanced those arguments in strong terms.  The language in the Statements does not make his arguments more persuasive – but based on the applicable standards, it does not amount to bad faith.

For these reasons, and based on the entire record, the Trustee has not shown that sanctions are warranted pursuant to Bankruptcy Code Section 105 and this Court's inherent authority.

*The Trustee's Request for an Order Sanctioning Dahiya for Violations of Local Bankruptcy Rule 9019-1*

The Trustee argues that Dahiya should be sanctioned because he disclosed a confidential mediation communication in violation of Local Bankruptcy Rule 9019-1(1).  Specifically, the Trustee points to Dahiya's statement in the Reply Memorandum, that he signed the Stipulation "only on the basis of being urged with the words sometimes, it takes a stronger person to walk away.  I decided to walk away," and states that this violates the confidentiality that is so vital to the mediation process.  Sanctions Mot. at 13.

Dahiya denies that he made an impermissible disclosure or that he violated Local Bankruptcy Rule 9019-1(1) and responds, in substance, that in signing the Stipulation, he did not

admit to fault, and that "it is expected with or without reaffirmation that one is 'courteous and civil.'" Sanctions Opp. at 4.

The starting point for consideration of the Trustee's argument is Local Bankruptcy Rule 9019-1(l). This rule generally prohibits parties from disclosing "[a]ny oral or written statements made by the mediator, the mediation participants, or others during the mediation process." And Rule 9019-1 refers to Federal Rule of Evidence 408, which protects the confidentiality of most statements in settlement negotiations, as its foundation.

As noted above, courts regularly recognize that the confidentiality of mediation communications is fundamental to the mediation process, for many of the same reasons that Federal Rule of Evidence 408 protects the confidentiality of settlement negotiations and positions. For example, in *Bernard v. Galen Group*, 901 F. Supp. 778 (S.D.N.Y. 1995), the court sanctioned the plaintiff's attorney for violating a mediation confidentiality order by disclosing, in a letter to the district court, the terms of settlement offers made during the mediation process. The court observed:

> The guarantee of confidentiality permits and encourages counsel to discuss matters in an uninhibited fashion. If participants cannot rely on the confidential treatment of everything that transpires during these sessions, then counsel of necessity will feel constrained to conduct themselves in a cautious, tight lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution in a civil dispute.

*Bernard*, 901 F. Supp. at 784.

And in *Lee v. Grand Sichuan Eastern (NY) Inc.*, 2014 WL 199512 (S.D.N.Y. Jan. 17, 2014), the court sanctioned the plaintiff's attorney where he quoted extensively from statements made by the magistrate judge during a settlement conference in both his Rule 11 motion and his opposition to a summary judgment motion.

A close review of the statement made by Dahiya is both necessary and helpful to address the Trustee's arguments that sanctions are warranted here.  In the Reply to the Trustee's Opposition to the Motion to Dismiss, Dahiya addresses the *Ng* Stipulation and states, "it was an Agreement, that was signed only on the basis of being urged with the words: 'Sometimes, it takes a stronger person to walk away.'  I decided to walk away."  Mot. to Dismiss Reply at 14.

The proscription of Rule 9019-1, while broad, is also precise, and it bars the disclosure of oral or written statements made "by the mediator, the mediation participants, or others during the mediation process."  Local Bankruptcy Rule 9019-1.  At a minimum, then, as a general matter, a violation of this rule requires the disclosure of both a statement and, directly or by implication, the identity of the mediation participant who made it.  Often, the identity of the speaker will be evident – such as, for example, where a settlement demand or offer is revealed.  Here, however, that is not the case.

That is, Dahiya does not connect the statement to any particular mediation participant, or even necessarily to the mediation, as opposed to the process that led to the settlement.  He does not identify who urged him to consider "that sometimes it takes a stronger person to walk away," when that statement was made, or the context in which it occurred.  Indeed it was the Trustee, not Dahiya, that attributed the statement to the mediator.  Mot. to Dismiss Opp. at 13.

For these reasons, and based on the entire record, the Trustee has not shown that Dahiya violated Local Bankruptcy Rule 9019-1 by disclosing a confidential mediation communication.  For the same reasons, the Trustee has not shown that sanctions are warranted based on a violation of this Rule.

*The Trustee's Request for an Order Sanctioning Dahiya for Violations of New York's Rules of Professional Conduct*

The Trustee also asks the Court to impose sanctions on Dahiya on grounds that language employed in the Statements amounts to a violation of New York's Rules of Professional Conduct. The Trustee argues, in substance, that the Statements are false, that the Statements were made frivolously and in bad faith, that they are not based on Dahiya's personal opinion after analyzing the facts with respect to evidence of extortion or threats by the Trustee, or "how quickly [he] closes cases," and that Dahiya has needlessly multiplied these proceedings and compounded the violations the Trustee identifies by not "recanting" the Statements when he had the opportunity to do so in his reply. Sanctions Mot. at 10-11. The Trustee does not question Dahiya's right to file the Motion to Dismiss – which was granted in part – but seeks sanctions based on what the Trustee characterizes as the "malicious and lying language contained therein." Sanctions Reply at ¶ 8.

This is an unusual request for relief. The imposition of sanctions or other harsh consequences based on the use of strong and offensive language by counsel should be reserved for the most extreme situations. Language that is viewed as forceful rhetoric in support of a client's cause by one lawyer may be perceived as sharply and sanctionably obnoxious by another. Adjectives and adverbs rarely render a brief, an oral argument, a decision, or an order more persuasive or compelling. A pointed metaphor may shed light on a novel argument, but intemperate or inflammatory prose may obscure it. For all of these reasons, lawyers, parties, and courts alike share a responsibility to assure that court proceedings are conducted at a suitable level of professional decorum and with manifest respect for each and all of the participants.

Few courts have addressed the imposition of sanctions for violations of the Professional Conduct Rules based on an attorney's use of offensive language in reported decisions. But

guidance can be found in decisions where an attorney's professionalism is called into question in the context of requests for sanctions or other relief.

The Second Circuit addressed whether sanctions imposed *sua sponte* by the district court under 28 U.S.C. § 1927 were warranted in *60 East 80th Street Equities, Inc. v. Sapir (In re 60 East 80th Street Equities, Inc.)*, 218 F.3d 109 (2d Cir. 2000). There, the court affirmed the district court's award of sanctions and imposed additional sanctions on several grounds, including that the position advanced by the attorney was "completely without merit" and advanced in bad faith. The court observed that the attorney's "bad faith and vexatiousness" were "most evident . . . in the nature of his arguments . . . in which he disparaged and made unsubstantiated allegations impugning the integrity of the Bankruptcy Court Judge and the Trustee – claims which had absolutely nothing to do with the merits of his case." *In re 60 East 80th Street Equities*, 218 F.3d at 116. The court continued:

> Though the full extent of his slanderous vitriol has been recounted above, some of the more outrageous comments bear repeating. He accused a federal judge and a fellow member of the bar of engaging in civil and criminal misconduct, stating in his papers, for example, that the Trustee had the "helping hand of an approvingly winking Bankruptcy Court," . . . that the court applied "double standards," . . .; that the sale at issue was a "judicially sanctioned grand larceny," . . . and that the Trustee and [the buyer of estate assets] engaged in a judicially sanctioned fraud. He called the Trustee an "idiot," . . . and accused the Bankruptcy Judge of "fundamental ignorance," . . . . Such comments cross the line from passionate advocacy and disagreement with a court's decision into sanctionable conduct evincing bad faith.

*In re 60 East 80th Street Equities*, 218 F.3d at 116-17. The court concluded that bad faith could be inferred from the "clear lack of merit of the claims" and "the numerous attempts to impugn the integrity of a federal judge and fellow attorney through totally unsubstantiated abusive and slanderous statements." *In re 60 East 80th Street Equities*, 218 F.3d at 117.

The Second Circuit also imposed sanctions based on the lawyer's conduct before it pursuant to Federal Rule of Appellate Procedure 38. This called for the court to address whether the attorney's "appeal of the District Court's imposition of sanctions has been conducted in a frivolous manner and in bad faith." *In re 60 East 80th Street Equities*, 218 F.3d at 119. As to whether the appeal was frivolous, the court found that the attorney's "persistence in appealing the District Court's sanctions, together with the nature of his arguments, is clearly frivolous." *Id*. As to the attorney's bad faith, the court similarly concluded that the attorney's "bad faith is evident, again, in the nature of his arguments to this Court. He continues in his briefs to this Court to launch the same outrageous and groundless personal attacks upon the Bankruptcy Judge, Trustee, and now also the District Court." *In re 60 East 80th Street Equities*, 218 F.3d at 120. The court also noted that it was relevant that the attorney's behavior was "repetitive" and that he had previously been sanctioned for "filing a frivolous appeal of the bankruptcy court's decision, using intemperate language, and making baseless fraud and collusion accusations against the bankruptcy judge . . . [including that] the bankruptcy judge [was] a 'bigot donning the judicial garb of a bankruptcy judge openly assuming the role of an advocate of Defendants' cause.'" *Id.*

Several courts have explored the boundary between language that is strong but not sanctionable and language that crosses the line and triggers consequences, including sanctions and dismissal. For example, in *Jermosen v. Coughlin*, 878 F. Supp. 444 (N.D.N.Y. 1995), the defendant sought dismissal of the plaintiff's complaint as a sanction for his use of "foul and threatening language." *Jermosen*, 878 F. Supp. at 449. The court declined to impose the sanction of dismissal, and observed:

> While it is clear that some material in plaintiff's papers is objectionable, the Court will rely at this time upon its strongest admonition that plaintiff desist. Plaintiff is

hereby placed on notice, however, that should he resume his use of abusive or threatening language his remaining claims will be summarily dismissed with prejudice.

*Id*.

To similar effect, in *Rhoden v. Allen*, 1997 WL 158326 (N.D. Ill. Mar. 31, 1997), the court declined to dismiss a *pro se* inmate's complaint on grounds that he used "'foul and abusive language'" and made "numerous vulgar references." *Rhoden*, 1997 WL 158326, at *4. At the same time, the court found that "these editorial comments are abusive and foul and have no place in these proceedings," admonished the plaintiff "to cease using such language in any further submissions to the court or correspondence with . . . counsel," and stated that the "future use of such abusive or threatening language, in this or any other cases, will be considered malicious and will result in dismissal of his claim." *Id.*

Here, the Trustee points to several of the Professional Conduct Rules and argues that Dahiya should be sanctioned because his conduct in making the Statements runs afoul of their proscriptions. He cites NY RPC 3.1(b)(3), which defines frivolous conduct as, among other things, where "the lawyer knowingly asserts material factual statements that are false." NY RPC 3.1(b)(3). He also cites NY RPC 3.2, which addresses litigation delay, and NY RPC 3.3(a)(1) and 3.3(f)(2), which address a lawyer making or failing to correct a false statement to a tribunal, and a lawyer engaging in discourteous conduct before a tribunal. And he cites NY RPC 8.4, which addresses misconduct by an attorney, and calls for compliance with the Rules.

The Statements include the phrases "extortionist journey," "threaten a family into further submission, "reach deeper to extort more settlement," "inspiration to Geltzer to dig more," and the assertion that the Trustee delays in closing cases because of "[u]nexpected accretion." As

noted above, this language is strong and provocative, and to the Trustee, it is offensive. At the same time, viewed in the context of the Motion to Dismiss, the Statements are more accurately viewed as rhetorical flourishes than as knowing and material statements that are false. That is, the Trustee has not shown that the Statements are "material factual statements that are false" with respect to the relief sought in the Motion to Dismiss or otherwise frivolous, or that they amount to a sanctionable violation of NY RPC 3.1. *See Azkour,* 2012 WL 4832811, at \*5 (concluding that the statement that opposing counsel had "no knowledge, whatsoever, of the basic principles of common law" did not violate NY RPC 3.1 because it was not "an assertion of a 'material fact'").

The Trustee also argues that the Statements are sanctionable as violations of NY RPC 3.4(d)(3), which prohibits an attorney from asserting a personal opinion "before a tribunal on behalf of a client . . . as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused." NY RPC 3.4(d)(3). The rule does not prohibit all expressions of personal opinion, and permits an attorney to argue "for any position or conclusion" based on an analysis of the evidence. NY RPC 3.4(d)(3). The purposes of the rule include maintaining the appropriate distinctions between argument and evidence, and between the lawyer's professional advocacy and his or her personal views.

Here, Dahiya has made arguments on behalf of his clients in a manner that reflects his belief in the justness of their cause. And as noted above, "'advocacy is an art in which the unrelenting pursuit of truth and the most thorough self-control must be delicately balanced,' and 'zealous advocacy in behalf of a client can never excuse contumacious or disrespectful conduct.'" *In re Khan*, 488 B.R. at 521. The language that he employs is strong, but it does not cross the line that separates  permissible zealous advocacy from impermissible and sanctionable personal

opinion as to "the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of the accused." That is, the Trustee has not shown that the Statements are impermissible and sanctionable assertions of personal opinion that violate NY RPC 3.4(d)(3).

And the Trustee looks to NY RPC 3.4(e), which prohibits "threat[s] to present criminal charges solely to obtain an advantage in a civil matter," and asserts that Dahiya's statements run afoul of this rule because they are, among other things, "bad faith accusations that falsely accuse me, as Trustee, of criminal conduct." Sanctions Mot. at 26. This rule reflects the enormous significance of a threat to pursue criminal charges and imposes on lawyers the obligation not to do so solely to gain advantage in a civil matter.

A violation of Rule 3.4(d)(3) requires at least three matters to be shown: first, an attorney must threaten to present criminal charges; second, the attorney must do so to gain an advantage in a civil matter; and third, the attorney must make the threat "solely" to gain that advantage. The Statements include references to the Trustee's "extortionist journey," the Trustee's intent "to threaten a family into further submission," and the Trustee's devising "ways to reach deeper to extort more settlement." Mot. to Dismiss at 8, 9, 12.

The Trustee understandably objects to even the perceived suggestion that his conduct is in the nature of the crime of extortion. Even if these assertions are viewed as consistent with a threat to present criminal charges, the Trustee has not shown that Dahiya actually threatened to present criminal charges of extortion against him, or that he did so solely to gain an advantage in this adversary proceeding. That is, the Trustee has not established that Dahiya should be sanctioned for violating NY RPC 3.4(e) by threatening "to present criminal charges solely to obtain an advantage in a civil matter," which is what the Rule 3.4(e) prohibits.

For these reasons, and based on the entire record, the Trustee has not shown that Dahiya violated the New York Rules of Professional Conduct by making the Statements. For the same reasons, the Trustee has not shown that sanctions are warranted based on violations of these Rules.

### Conclusion

For the reasons stated herein, and based on the entire record, to the extent that the Trustee seeks an order of contempt for violations of the *Ng* Stipulated Order and the *Ng* Mediation Order, the Motion for Contempt and Sanctions is denied without prejudice to a request for such relief in the case in which those orders were entered. In all other respects, the Motion for Contempt and Sanctions is denied. An order in conformity with this memorandum decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**March 3, 2017**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**