UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:                                              Chapter 7

ESTELLA BRIZINOVA and                               Case No. 12-42935-ess
EDWARD SOSHKIN, *aka* EDUARD SOSHKIN,

                        Debtors.
-----------------------------------------------------------------x
ROBERT L. GELTZER, CHAPTER 7
TRUSTEE OF THE ESTATE OF ESTELLA
BRIZINOVA AND EDWARD SOSHKIN,                       Adv. Pro. No. 15-01073-ess

                        Plaintiff,

            -against-

ESTELLA BRIZINOVA and
EDWARD SOSHKIN,

                        Defendants.
-----------------------------------------------------------------x


# MEMORANDUM DECISION
# ON MOTION FOR JUDGMENT ON THE PLEADINGS

Appearances:

Robert A. Wolf, Esq.                      Karamvir Dahiya, Esq.
Tarter Krinsky & Drogin LLP               Dahiya Law Offices, LLC
1350 Broadway                             75 Maiden Lane
11th floor                                Suite 506
New York, NY 10018                        New York, NY 10038
  *Attorneys for Robert L. Geltzer, as*     *Attorneys for Estella Brizinova and*
  *Chapter 7 Trustee of the Estate of*      *Edward Soshkin*
  *Estella Brizinova and Edward Soshkin*

Robert L. Geltzer
Law Office of Robert L. Geltzer
1556 Third Avenue
Suite 505
New York, NY 10128
  *Chapter 7 Trustee of the Estate of*
  *Estella Brizinova and Edward Soshkin*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Robert L. Geltzer, the Chapter 7 Trustee of the Estate of Estella Brizinova and Edward Soshkin, *aka* Eduard Soshkin (together, the "Debtors"), commenced this adversary proceeding by filing a complaint (the "Complaint"), against defendants Estella Brizinova and Edward Soshkin.  The Trustee seeks to recover alleged estate property that, he asserts, the Defendants have improperly refused to turn over, in violation of Bankruptcy Code Section 542.  The Trustee also seeks declaratory relief, injunctive relief, and compensatory and punitive damages pursuant to Bankruptcy Code Sections 362(a) and 362(k), based on the Defendants' alleged transfer of estate property in violation of the automatic stay.  And the Trustee seeks an award of compensatory and punitive damages based on a theory of common law conversion.

As this Court has discussed previously in *Geltzer v. Brizinova (In re Brizinova)*, 554 B.R. 64 (Bankr. E.D.N.Y. 2016) ("*Brizinova I*"), the Trustee alleges that pursuant to Section 542, the Defendants are required to turn over post-petition sale proceeds in the amount of $250,000 (the "Post-Petition Sale Proceeds") from ENSI Consulting, Inc. ("ENSI"), an auto supply parts company listed by the Debtors on Schedule B - Personal Property as owned one hundred percent by Ms. Brizinova.  The Trustee also alleges that the estate is entitled to recover damages under Bankruptcy Code Sections 362(a) and 362(k) for violations of the automatic stay arising from the Defendants' post-petition transfer of some or all of their interest in ENSI.  And the Trustee alleges that the Defendants willfully and knowingly converted estate property, damaging the estate in the amount of $250,000, and seeks an award of punitive damages in an amount to be determined by this Court.

This is the Defendants' second attempt to obtain an order dismissing the Complaint.  In *Brizinova I*, this Court denied the Defendants' motion to dismiss (the "Motion to Dismiss"), and sustained the Trustee's turnover and stay violation claims.  *Brizinova I*, 554 B.R. at 88.  The Court also denied in part the Motion to Dismiss with respect to the Trustee's conversion claim, to the extent that he sought to recover the Defendants' ownership interest in ENSI.  But the Court dismissed the conversion claim with respect to conversion of the Post-Petition Sale Proceeds, on grounds that the Trustee did "not adequately allege[] that the Defendants converted specifically identifiable funds."  *Brizinova I*, 554 B.R. at 87.  The Court granted leave to replead, but the Trustee did not do so.

Thereafter, the Trustee commenced an adversary proceeding by filing a complaint against Zlata Soshkin, *aka* Zlata Polukhina, the Defendants' daughter-in-law, (the "*Soshkin* Complaint") seeking to recover the Post-Petition Sale Proceeds (the "*Soshkin* Adversary").  *Geltzer v. Soshkin (In re Brizinova)*, Adv. Pro. No. 17-01157, ECF No. 1.  There too, the Trustee asserted claims for turnover, stay violations, and conversion of the Post-Petition Sale Proceeds.  Ms. Soshkin moved to dismiss the *Soshkin* Complaint, and argued, for the first time, that the property at issue is property of another entity, not property of the estate, and on July 20, 2018, the Court entered an order dismissing the *Soshkin* Complaint, and granting the Trustee leave to replead.  *In re Brizinova*, Adv. Pro. No. 17-01157, ECF No. 20 (the "*Soshkin* Decision").

Now, asserting these new grounds, the Defendants again seek to dismiss the Complaint in this adversary proceeding.  They move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), made applicable here by Federal Rule of Bankruptcy Procedure 7012, and for the entry of an order dismissing the Complaint for lack of subject matter jurisdiction pursuant

to Federal Rule of Civil Procedure 12(h), also made applicable here by Federal Rule of

Bankruptcy Procedure 7012.

The questions posed by this motion are whether this Court has subject matter jurisdiction

over the Complaint, and if so, whether the Defendants are entitled to judgment on the pleadings

on the claims for turnover of property of the estate, violations of the automatic stay, and

conversion of estate property.

For the reasons set forth below, the Defendants' motion is granted.

## **Background**

### *Procedural History*

As noted, this is the second time that the Court has been asked to adjudicate a dispositive

motion by the Defendants in this adversary proceeding, and familiarity with the proceedings is

assumed.

A brief background narrative sets the scene. The Defendants are husband and wife who

filed this joint bankruptcy petition on April 24, 2012. The Trustee was appointed on that date.

On Schedule B, the Defendants indicate that as of the petition date, Ms. Brizinova held one

hundred percent of the stock of ENSI, a New York corporation. According to Schedule B, the

value of Ms. Brizinova's interest in the ENSI shares as of the petition date was zero. The

Defendants' Statement of Financial Affairs states that ENSI was a business "in which the debtor

owned 5 percent or more of the voting or equity securities within six years immediately

preceding the commencement of this case." Petition at 37, ECF No. 1 (Statement of Financial

Affairs). On Schedule I - Current Income of Individual Debtor(s), the Defendants indicate that

Mr. Soshkin was employed by ENSI as a bookkeeper and customer service representative, and

had been so employed for the past ten years. Also on Schedule I, the Defendants indicate that

Ms. Brizinova was a packer for ENSI, and had similarly held that position for ten years.  On the Statement of Financial Affairs, the Defendants indicate that between 2010 and 2012, they together received income from ENSI's operations in the total amount of $19,620.  The Defendants received a discharge more than six years ago, on July 24, 2012.

On March 13, 2014, the Trustee commenced an adversary proceeding against Nick Soshkin and Igor Soshkin, the Defendants' sons, seeking to recover allegedly fraudulent transfers by the Defendants to their sons of certain interests in real and personal property located in Florida.  The parties resolved the Trustee's claims by entering into a stipulation of settlement, which was approved by this Court on December 12, 2014.  This action followed some six months later.

_The Allegations of the Complaint_

On June 23, 2015, more than three years after the petition date, the Trustee commenced this adversary proceeding.  The Trustee alleges that prior to the petition date, Ms. Brizinova held a one hundred percent ownership interest in ENSI which, as the Defendants testified at the Section 341 meeting of creditors, was in the business of selling auto parts over the internet. According to the Trustee, subsequent to the petition date, the Defendants continued to operate ENSI on at least two websites, *autoaccessorystore.com* and *mimousa.com*, and generated the Post-Petition Sale Proceeds from the operation of those websites.  The Trustee alleges that those Post-Petition Sale Proceeds are property of the Defendants' estate, and that despite his demands, the Defendants have not turned them over to the Trustee.

In his First Claim for Relief, asserted under Bankruptcy Code Section 542, the Trustee alleges that the Post-Petition Sale Proceeds are estate property that the Defendants have failed to turn over notwithstanding his demand.  He seeks an order directing the Defendants to turn over

4

the Post-Petition Sale Proceeds, in an amount to be proven at trial, which the Trustee estimates to be at least $250,000, plus interest.

In his Second Claim for Relief, asserted under Bankruptcy Code Sections 362(a) and 362(k), the Trustee alleges, upon information and belief, that despite the Defendants' knowledge that the bankruptcy estate had become the owner of their interest in ENSI, they transferred to one or more unnamed third parties some or all of their interest in ENSI, together with some or all of the Post-Petition Sale Proceeds, after the petition date.  The Trustee further alleges that the Defendants took these actions willfully and "with their full knowledge" that their actions violated the automatic stay.  Compl. ¶ 20, ECF No. 1.  The Trustee seeks a declaratory judgment that the Defendants violated the automatic stay; an order enforcing the stay and enjoining the Defendants from making further transfers of the estate's interest in ENSI, including the Post-Petition Sale Proceeds; and damages under Bankruptcy Code Section 362(k) in an estimated amount of $250,000, plus interest and punitive damages.

In his Third Claim for Relief, asserted under the common law doctrine of conversion, the Trustee alleges, upon information and belief, that as a result of the Defendants' actions, they "willfully, knowingly, and wrongly" converted property belonging to the Defendants' estate, "namely the estate's 100% interest in ENSI and in the . . . Post-Petition Sale Proceeds, to the exclusion and detriment of the Trustee, and have therefore improperly exercised dominion and control over such property."  Compl. ¶ 23.  The Trustee seeks damages in an amount to be determined at trial, in an estimated amount of $250,000, plus interest, and punitive damages.

*This Motion for Judgment*

On May 30, 2018, the Defendants filed a motion for judgment on the pleadings dismissing this adversary proceeding (the "Motion for Judgment").  As Ms. Soshkin argued in

her motion to dismiss the *Soshkin* Complaint, the Defendants argue here that the corporate assets of ENSI are not assets of the Debtors and do not form any part of the estate, but belong to ENSI, an independent corporation that is not a debtor.  The Defendants argue that, although they did not raise this defense in the Motion to Dismiss, they are permitted by Federal Rule of Civil Procedure 12(c) to assert it now.  The Defendants argue that "'a defense of failure to state a claim may be raised in a Rule 12(c) motion for judgment on the pleadings, and when this occurs the court simply treats the motion as if it were a motion to dismiss.'"  Mot. for Judg. at 1, ECF No. 103-1 (quoting *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 909 n.2 (2d Cir. 1988)).  The Defendants also argue that the law of the case doctrine is inapplicable here, because the denial of the motion to dismiss in *Brizinova I* is an "interim, or tentative ruling[]," and as such "do[es] not establish a law of the case."  Reply at 4, ECF No. 116.

The Defendants also argue that the Court lacks subject matter jurisdiction over the Complaint, that there is no bankruptcy jurisdiction over non-debtor ENSI, and that the Trustee lacks standing to recover the Post-Petition Sale Proceeds, because the property of ENSI does not belong to the estate.  And the Defendants note that "Rule 12(h)(3) allows a Rule 12(b)(1) motion to be raised 'at any time' in the litigation."  Reply at 7 (citation omitted).  According to the Defendants, "[t]here is no actual controversy here [because] there is no estate asset involved," so "there is no jurisdiction."  Reply at 9.  The Defendants assert that "[s]ince the alleged sale proceeds happen[] to be that of a third party and not a debtor . . . [t]he court [lacks] subject matter jurisdiction."  Reply at 6.  And "parties . . . may not waive objections to subject matter jurisdiction by consenting to federal jurisdiction where it does not in fact exist."  *Id*.

Separately, the Defendants argue that "[t]he plaintiff disavowed the entire case" when he filed the *Soshkin* Complaint.  Mot. for Judg. at 6.  The Defendants assert that the Trustee has "in

the most unequivocal ways, disavowed [his] claims against the defendants by instituting the second complaint against the defendants' daughter in law."  Mot. for Judg. at 8.  They assert that "tossing the blame, from one party to the other, is a classic example of judicial estoppel," and that it is time to "hold the trustee accountable to his acts and stances" by invoking that doctrine "'to protect the judicial system from being whipsawed with inconsistent arguments.'"  Mot. for Judg. at 7 (citation omitted).

*The Trustee's Opposition*

The Trustee opposes the Motion for Judgment.  He responds that the Defendants did not argue in the Motion to Dismiss that the Post-Petition Sale Proceeds were not property of the estate, and that "[m]ore importantly, this Court made holdings in [*Brizinova I*] that the Trustee had adequately alleged that such proceeds were property of the bankruptcy estate – holdings which constitute the law of this adversary proceeding."  Opp. Mem. at 2, ECF No. 111.  And the Trustee argues that in addition, "pertinent case law . . . clearly demonstrates that the [Post-Petition Sale Proceeds] constitute property of the Debtors' bankruptcy estate."  Opp. Mem. at 3.

In addition, the Trustee asserts that this Court has subject matter jurisdiction over this adversary proceeding because in *Brizinova I*, "this Court explicitly held that it had jurisdiction over the Trustee's claims for turnover, conversion, and violation of the automatic stay."  Opp. Mem. at 8.  And the Trustee asserts that the Defendants' jurisdictional argument is based on the "clearly erroneous assertion" that the Post-Petition Sale Proceeds are not property of the estate. Opp. Mem. at 8.

*The Supplemental Briefing*

On July 30, 2018, the Court held a preliminary hearing on the Motion for Judgment, and set August 10, 2018, as the date by when the Defendants "may file a supplementary

memorandum of law," and August 24, 2018, as the date by when "the Plaintiff may file a supplementary memorandum of law."  Scheduling Order, ECF No. 118.

On August 9, 2018, the Defendants filed a supplemental brief titled "Amended Motion for Summary Judgment" (the "Supplemental Memorandum").  Like the Motion for Judgment, it seeks an order dismissing this Complaint.  Supp. Mem., ECF No. 121.  Thereafter, on August 22, 2018, the Plaintiff filed a supplemental memorandum of law in opposition, ECF No. 122, and on August 23, 2018, the Defendants filed a reply, ECF No. 123.

In the Supplemental Memorandum, the Defendants supplement the record with legal authority and argument in support of the Motion for Judgment.  But they also attempt to request additional relief, and submit an "Affirmation in Support of Summary Judgment."  Supp. Mem. at 1, ECF No. 121-1.  There, for the first time, the Defendants seek summary judgment dismissing the Complaint, on grounds that there are no genuine issues of material fact and that the Defendants are entitled to judgment as a matter of law.

The Trustee opposes the additional relief sought in the Supplemental Memorandum, on grounds, among others, that the Defendants are precluded from seeking such relief after the expiration of the Court's May 16, 2018 deadline.  The Trustee also argues that even if the Defendants could seek summary judgment at this stage in these proceedings, "their supplemental papers fall woefully short of what is required for such a motion," because they are not supported by a separate statement of undisputed material facts as required by the Local Bankruptcy Rules for this District, or evidence in the form of an affirmation or affidavit.  Pl's Supp. Mem. at 3-4.

The opportunity to submit supplemental briefing permitted the parties to augment their legal arguments with respect to the Motion for Judgment, particularly in light of the Court's *Soshkin* Decision.  It did not permit the parties to expand their request for relief.  The Defendants

elected to seek dismissal of the Complaint pursuant to Rules 12(c) and 12(h), the parties availed themselves of opportunities to brief the issues raised by the Motion for Judgment, and the deadline to seek summary judgment has passed.

For these reasons, the Court declines to deem the Defendants' Supplemental Memorandum as a motion for summary judgment.

The Hearings

On July 30, 2018 and September 17, 2018, Court held pretrial conferences and heard argument on the Motion for Judgment at which the Trustee and the Defendants, each by counsel, appeared and were heard. At the September 17, 2018 hearing, the parties waived further argument, and the Court closed the record and reserved decision

## Discussion

Jurisdiction

The Defendants assert that the Court lacks subject matter jurisdiction to determine this dispute because "ENSI has not filed for bankruptcy." Mot. for Judg. at 5. They also assert that the Trustee "lacks standing, as the property of [] ENSI did not belong to the estate," and so he has not suffered an injury. *Id.* The Defendants argue that as a result, there is no "'case or controversy' between himself and the defendants within the meaning of Art. III." Mot. for Judg. at 6 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). And although the Trustee consents to the entry of a final order by this Court, the Defendants do not.

The Trustee responds that this Court has jurisdiction to determine this dispute, based on the holding in *Brizinova I*, applicable statutory law, and the law of the case doctrine.

As a unit of the United States District Court for the Eastern District of New York, this Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1). This

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).  And as a core matter, this Court has constitutional authority to enter a final judgment, because the Trustee's claims stem "from the bankruptcy itself."  *Stern v. Marshall*, 564 U.S. 462, 499 (2011).

And a Chapter 7 trustee has standing to assert claims for turnover, stay violations, and conversion, because Bankruptcy Code Section 704 imposes duties on a trustee "to collect and reduce to money the property of the estate" and to "investigate the financial affairs of the debtor," among others.  11 U.S.C. § 704(a).  This statutory imperative gives a Chapter 7 trustee standing to pursue claims for the benefit of the estate, and satisfies the requirement that to have standing, "a plaintiff must have more than 'a general interest common to all members of the public.'"  *Lance v. Coffman*, 549 U.S. 437, 440 (2007) (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937)).

For these reasons, this Court has jurisdiction and the authority to consider and enter judgment on these claims under 28 U.S.C. § 1334(b) and the Standing Order of Reference dated August 28, 1986, as amended by Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.

The Law of the Case

The Court considers the Trustee's argument that based on the decision in *Brizinova I* and the law of the case doctrine, the Court must conclude that the Trustee's claims for turnover and conversion of estate property are adequately pleaded, and that the Motion for Judgment must be denied.

The law of the case doctrine "'does not rigidly bind a court to its former decisions, but is only addressed to its good sense.'"  *Zdanok v. Glidden Co.*, 327 F.2d 944, 952-53 (2d Cir. 1964) (quoting *Higgins v. California Prune & Apricot Grower, Inc.*, 3 F.2d 896, 898 (2d Cir. 1924) (L.

Hand, J.)).  As the Supreme Court has observed, "[t]he doctrine 'expresses the practice of courts generally to refuse to reopen what has been decided,' but it does not 'limit [courts'] power.'" *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)).

The Second Circuit recently noted "that [the doctrine of law of the case] is not a rule that bars courts from reconsidering prior rulings, but is rather 'a discretionary rule of practice [that] generally does not limit a court's power to reconsider an issue.'"  *Colvin v. Keen*, 900 F.3d 63, 68 (2d Cir. 2018) (quoting *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991)).  The Second Circuit also noted that "when a court . . . faces the question whether to depart from its *own* prior ruling, the court has wide discretion to make whichever decision it thinks preferable."  *Keen*, 900 F.3d at 73.

The law of the case doctrine is discretionary in nature, and pragmatic in application.  And as one authority explains, "the law of the case doctrine expresses the general rule that courts will not reopen issues that have already been decided."  18 J. Moore, J. Lucas, T. Currier, *Moore's Federal Practice – Civil*, § 134.21[1] (2018).  To similar effect, "although a court has the power to revisit its own decisions . . . it should not do so absent extraordinary circumstances showing that the prior decision was clearly wrong and would work a manifest injustice.  These principles must be applied with common sense."  *Id.*

A range of circumstances have been cited by courts seeking to determine whether to apply the law of the case doctrine.  Two considerations stand out as fundamental:  whether there is identity of parties between the prior and subsequent matters; and whether the prior decision is a final one.

As to the question of identity of the parties, courts consistently find that this is necessary for the doctrine to apply.  As one court has explained:

> The "law of the case'' doctrine is that a decision at one stage of a litigation can in the Court's discretion be determined to be binding precedent in following stages of the same litigation or to different lawsuits *between the parties.  See In re PCH Associates*, 949 F.2d 585, 592 (2d Cir. 1991).  However, the law of the case doctrine is inapplicable to the instant action.  This is not the same litigation or a different litigation between the same parties.

*Ackerman v. Schultz (In re Schultz)*, 250 B.R. 22, 29 (Bankr. E.D.N.Y. 2000).

As to the question of entry of a final order, the Supreme Court long ago noted that "[w]e think that [the law of the case doctrine] requires a final judgment to sustain the application of the rule . . . just as it does for the kindred rule of res judicata."  *United States v. U.S. Smelting Co.*, 339 U.S. 186, 198-99 (1950).  For these reasons, courts have declined to apply the doctrine when the prior order denied a motion to dismiss and "refus[ed] to grant summary judgment."  *GAF Corp. v. Circle Floor Co.*, 329 F. Supp. 823, 826-27 (S.D.N.Y. 1971).  As one court explained, "the deni[al of a] motion to dismiss . . . by definition is not a final order.  The decision allowed the case to continue to trial – it was not a final order ending the case."  *Datiz v. Int'l Recovery Assocs.*, 2017 U.S. Dist. LEXIS 2477, at *5 (E.D.N.Y. Jan. 4, 2017).

Here, it is plain from these considerations that *Brizinova I* does not supply the law of the case for this adversary proceeding.  Although there is identity of parties here, there is no final judgment, because the decision in *Brizinova I* determined the Debtors' Motion to Dismiss by granting leave to replead with respect to one claim, and denying it in all other respects.  As previously noted, "the deni[al of a] motion to dismiss . . . by definition is not a final order" because "[t]he decision allowed the case to continue to trial – it was not a final order ending the case."  *Datiz*, 2017 U.S. Dist. LEXIS 2477, at *5.  That is, the Court's decision in *Brizinova I* did

not end the case, but rather "allowed the case to continue to trial," or, as here, to further

dispositive motion practice.

For these reasons, neither the decision in *Brizinova I* nor the law of the case doctrine

requires the conclusion that the Motion for Judgment must be denied.

Judicial Estoppel

Judicial estoppel is an equitable doctrine which "prevents a party from asserting a factual

position in one legal proceeding that is contrary to a position that it successfully advanced in

another proceeding." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir.

2004) (internal citation omitted). As the Supreme Court has stated:

> Where a party assumes a certain position in a legal proceeding, and succeeds in
> maintaining that position, he may not thereafter, simply because his interests have
> changed, assume a contrary position, especially if it be to the prejudice of the
> party who has acquiesced in the position formerly taken by him.

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal citation omitted). The Supreme

Court concluded that "[a]bsent success in a prior proceeding, a party's later inconsistent position

introduces no risk of inconsistent court determinations, and thus poses little threat to judicial

integrity." *New Hampshire v. Maine*, 532 U.S. at 750-51 (internal quotation and citation

omitted).

The Second Circuit has stated that "judicial estoppel, unlike other equitable doctrines, is

concerned with 'the integrity of the judicial process . . . [as opposed to] fairness between the

parties.'" *Adelphia Recovery Trust v. HSBC Bank USA, NA (In re Adelphia Recovery Trust)*,

634 F.3d 678, 698 (2d Cir. 2011) (quoting *OSRecovery, Inc. v. One Groupe Intl., Inc.*, 462 F.3d

87, 93 n.3 (2d Cir. 2006)). But "judicial estoppel is not a mechanical rule . . . [because] '[e]quity

eschews mechanical rules.'" *Clark v. All Acquisition, LLC*, 886 F.3d 261, 266 (2d Cir. 2018)

(quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)). As the Second Circuit observed,

"[w]hile the doctrine functions generally to bar litigants from taking inconsistent positions in successive suits, 'the exact criteria for invoking judicial estoppel will vary based on specific factual contexts.'"  *Clark*, 886 F.3d at 265 (2d Cir. 2018) (quoting *Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014)).

The Second Circuit has also stated that "[a] party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (internal quotation marks and citation omitted).  As the court explained, "in considering whether to apply judicial estoppel a court must focus on the conduct of the party to be estopped, not the party seeking estoppel. . . . [I]t is unfair *advantage* to the potentially prejudiced party's adversary that is the touchstone of the doctrine."  *In re Adelphia*, 634 F.3d at 698-99.  And because it is a harsh remedy, "[b]efore judicially estopping a litigant, a court must inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor of'" applying that doctrine.  *Clark*, 886 F.3d at 266-67 (quoting *New Hampshire v. Maine*, 532 U.S at 751).

The Defendants urge this Court to apply the judicial estoppel doctrine to bar the Trustee's claims and dismiss the Complaint, on grounds, in substance, that when he commenced the *Soshkin* Adversary to recover the Post-Petition Sale Proceeds from Ms. Soshkin, the Trustee "disavowed" his claims to recover the same property from the Defendants.  Mot. for Judg. at 8. They argue that the Trustee "shifted gears" when he commenced the *Soshkin* Adversary, "blaming [Ms. Soshkin] for the same act" that he attributes to the Defendants, and "indirectly reject[ed his] earlier claims against the defendants."  Mot. for Judg. at 7.  They also argue that

14

"there are no material disputed facts here," and that two "lawsuit[s] complaining of the same conduct" effectively "toss[] the blame from one party to the other," presenting "a classic example of judicial estoppel." Mot. for Judg. at 6-7.

Here, the record shows that the Trustee has commenced two adversary proceedings by filing complaints to recover the Post-Petition Sale Proceeds, this action and the *Soshkin* Adversary. The two complaints contain similar allegations, and seek to recover the same asset – the Post-Petition Sale Proceeds – from different defendants.[1] But at this stage in these proceedings, the Defendants have not shown that the Trustee's allegations give him an "unfair advantage" that triggers the application of the judicial estoppel doctrine.

Similarly, the Defendants have not shown that this Court rendered a judgment favorable to the Trustee that created an unfair advantage for him, because although the Trustee's claims were largely sustained in *Brizinova I*, the Court did not determine the merits of the claims, and did not render a judgment favorable to the Trustee, the party sought to be estopped. Certainly the Trustee "may not ultimately *recover* under both [legal theories,]" but for these reasons too, dismissal at the pleadings stage is not warranted here based on the judicial estoppel doctrine. *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 452 (S.D.N.Y. 2014).

Turning to the adequacy of the Trustee's claims on this motion for judgment on the pleadings, the Court must assess the Trustee's claims according to the framework provided by Federal Rules of Civil Procedure 8(a), 12(c), and 12(h), made applicable here by Bankruptcy Rules 7008 and 7012. These rules set forth the standards applicable to stating a claim for relief.

---

[1]  The Court notes that here, the Trustee seeks to recover "an amount not less than $250,000" from the Defendants, while in the *Soshkin* Adversary, the Trustee sought to recover "at least $42,431.66." Compl. ¶ 4, *Soshkin* Compl. ¶ 12.

Pleading Requirements Under Federal Rule of Civil Procedure 8(a)

As this Court has noted, Federal Rule of Civil Procedure 8(a) requires that a pleading contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re Brizinova*, 554 B.R. at 74 (quoting Fed. R. Civ. P. 8(a)(2)). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court stated that under this rule, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Thereafter, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court set forth a two-step approach for courts to follow when deciding a motion to dismiss. First, a court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

<u>Pleading Requirements Under Federal Rule of Civil Procedure 12(c)</u>

Pursuant to Federal Rule of Civil Procedure 12(h), "a defense of failure to state a claim may be raised in a Rule 12(c) motion for judgment on the pleadings, and when this occurs the court simply treats the motion as if it were a motion to dismiss." *Ayerst Labs.*, 850 F.2d at 909 n.2. Rule 12(c) permits a party to seek dismissal of a claim "[a]fter the pleadings are closed – but early enough not to delay trial," by moving for judgment on the pleadings. Fed. R. Civ. P. 12(c).

The Second Circuit has stated that "[t]he standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. . . . In each case, the court must accept as true the complaint's factual allegations and draw all inferences in the plaintiff's favor." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (internal quotations and citations omitted). *See Schwab v. Smalls*, 435 F. App'x 37, 39 (2d Cir. 2011) (applying the *Iqbal* standard to a Rule 12(c) motion because the standard for deciding a motion for judgment on the pleadings is the same as for deciding a motion to dismiss under Rule 12(b)(6)). In addition, "[o]n a [Rule] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).

The primary distinction between motions made under Rule 12(b)(6) and Rule 12(c) is one of timing. As one respected treatise explains:

> If the motion is filed before the answer, the court may treat it as a motion to dismiss under Rule 12(b)(6). Conversely, a motion to dismiss filed after the pleadings close will be treated as a motion for judgment on the pleadings. In fact, any distinction between [a Rule 12(b)(6) motion and a Rule 12(c) motion] is

purely semantic because the same standard applies to motions made under either subsection.

2 *Moore's Federal Practice* at § 12.38.

Applying the standard articulated by the Supreme Court in *Twombly*, to survive a motion to dismiss under Rule 12(b)(6) or Rule 12(c), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  As the Supreme Court explained, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

When considering a motion to dismiss under either Rule 12(b)(6) or Rule 12(c), a court should accept "'all [well-pleaded] factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor.'" *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 589 F.3d 176, 183 (2d Cir. 2009)).  A court is not required to accept as true those allegations that amount to no more than legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Property of the Estate and Proceeds Under the Bankruptcy Code

Bankruptcy Code Section 541(a) provides that the bankruptcy estate consists of "[a]ll legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a).  Bankruptcy Code Section 541(a)(6) further states that property of the estate includes the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor."  11 U.S.C. § 541(a)(6).

The definition of property of the estate is interpreted broadly, and "'every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [Section] 541.'" *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir.

2008) (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993)).  And "[t]he broad definition of property of the estate clearly encompasses a debtor's interest in another corporation's stock."  *In re Arcapita Bank B.S.C.(c)*, 2014 WL 2109931, at *2 (Bankr. S.D.N.Y. May 20, 2014) (citation omitted).  But the Bankruptcy Code does not define "proceeds," few courts have addressed the question in reported decisions, and some of those that have define "proceeds" simply by using the term itself.

"Proceeds" of estate property are also property of the estate.  As the *Collier* treatise notes, "if the estate sells . . . inventory or other property, the revenue will become property of the estate as 'proceeds, product, offspring, rent, or profits of or from property of the estate,' as provided under section 541(a)(6)."  5 *Collier on Bankruptcy* ¶ 541.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2018).  That is, "revenue" from the sale of estate property is also estate property.  This makes sense, because the change in an asset's form from one type, such as real estate or shares of a corporation, to another, such as cash, should not lead to a change in whether it is a part of a debtor's bankruptcy estate.

To this effect, courts have found proceeds to include "'whatever is received upon the sale, exchange, *collection, or other disposition* of collateral or proceeds,'" including a right to payment under a contract entered into before the bankruptcy case was filed.  *In re Saxton*, 1988 WL 1571475, at *2 (Bankr. D. Iowa 1988) (quoting Iowa Code § 554.9306(a)).  There, the bankruptcy court concluded that payments owed under a contract entered into pre-petition were proceeds because they were received as part of the contract.  *In re Saxton*, 1988 WL 1571475, at *2.

Other courts have found proceeds to include:

- residual commissions earned pre-petition but paid post-petition, *see In re Bosack*, 454 B.R. 625 (Bankr. W.D. Pa. 2011);

- proceeds from the post-petition sale of the debtor's real property, *see In re Steel Wheels Transp., LLC*, 2011 WL 5900958 (Bankr. D.N.J. Oct. 28, 2011);

- stock options not exercisable until post-petition, *see In re Michener*, 342 B.R. 428, 429 (Bankr. D. Del. 2006), and *In re Taronji*, 174 B.R. 964, 967 (Bankr. N.D. Ill. 1994); and

- life insurance policy proceeds where the insured dies after the bankruptcy case is filed, *see In re No. 1 Con-Struct Corp.*, 88 B.R. 452, 453 (Bankr. S.D. Fla. 1988).

*Whether the Defendants Are Entitled to Judgment on the Trustee's Claim for Turnover Under Bankruptcy Code Section 542(a)*

The Trustee's First Claim for Relief is for turnover of property under Bankruptcy Code Section 542(a). By this claim, the Trustee seeks to recover the Post-Petition Sale Proceeds from the Defendants. Section 542(a) provides:

> [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). As noted above, "a defense of failure to state a claim may be raised in a Rule 12(c) motion for judgment on the pleadings, and when this occurs the court simply treats the motion as if it were a motion to dismiss." *Ayerst Labs.*, 850 F.2d at 909 n.2.

The Trustee must allege three elements to state a claim under Section 542(a). These are: "'(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate.'" *Kramer v. Mahia (In re Khan)*, 2014 WL 4956676, at *22 (Bankr. E.D.N.Y. Sept. 30, 2014) (quoting *Zazzali v. Minert (In re DBSI, Inc.*), 468 B.R. 663, 669 (Bankr. D. Del. 2011)). The Court considers each of these elements in turn.

<u>Whether the Trustee Adequately Alleges that the Property at Issue Is in the Possession, Custody or Control of Another Entity</u>

The first element that the Trustee must allege to state a Section 542(a) claim is that the property at issue is in the possession, custody or control of another entity.

The Defendants argue, in substance, that the Trustee does not – and cannot – adequately allege this element of his turnover claim because the property at issue is not property of the estate. They do not dispute the Trustee's allegations that the bankruptcy estate owns a one hundred percent interest in the ENSI shares. But the Defendants argue that the Trustee's assertions are "flawed" because "[t]he corporate assets of ENSI . . . are not the asset of the debtors, but belong to an independent company, thus do not form any part[] of the estate." Mot. for Judg. at 1.

The Trustee responds that in *Brizinova I*, "this Court made holdings . . . that the Trustee had adequately alleged that such proceeds were property of the bankruptcy estate," and that "these holdings . . . on this issue constitute the law of this adversary proceeding." Opp. Mem. at 3. In addition, the Trustee responds that under applicable law, the Post-Petition Sale Proceeds "constitute property of the Debtor's bankruptcy estate." *Id.*

Here, a review of the Complaint shows that the Trustee alleges, among other things, that "the bankruptcy estate [is] the rightful owner of the 100% interest in ENSI since the Petition Date, and that the sale proceeds derived from ENSI's post-Petition Date business operations . . . constitute property of the Debtors' estate, [and] none of the Post-Petition Sale Proceeds have ever been turned over to the Trustee by the Defendants." Compl. ¶ 13. That is, the Trustee alleges that the property at issue – the Post-Petition Sale Proceeds generated from ENSI – is in the possession, custody, or control of the Defendants.

21

For these reasons, and based on the entire record, the Court concludes that Trustee adequately alleges the first element of a claim under Section 542 for turnover, that the property at issue is in the possession, custody or control of another entity, because he alleges that the Post-Petition Sale Proceeds are in the possession of the Defendants.

<u>Whether the Trustee Adequately Alleges that the Property at Issue Is Property that He May Use, Sell, or Lease</u>

The second element that the Trustee must allege to state a Section 542(a) claim is that the property at issue is property that the Trustee may use, sell, or lease under Bankruptcy Code Section 363.  Such property is defined broadly by Section 541 and includes "all legal or equitable interests of the debtor in property as of the commencement of the case" as well as "[p]roceeds, product, offspring, rents, or profits of or from property of the estate."  11 U.S.C. § 541(a)(1), (a)(6).  And as this Court has found, this element is adequately pleaded where the plaintiff seeks the turnover of *property of the estate* that can be put to use in connection with the *administration of the estate*, including paying the claims of creditors and the costs of administration of the estate.  *In re Brizinova*, 554 B.R. at 77.

The Defendants argue in substance that "the debtors' estate did not comprise the assets of the corporate entity," and thus the Post-Petition Sale Proceeds are not property of the estate that the Trustee may use, sell, or lease.  Mot. for Judg. at 2.

The Trustee responds that the Post-Petition Sale Proceeds are property of the Debtors' estate, and points to this Court's holdings in *Brizinova I* as support for this view.

As noted above, and as this Court stated in the *Soshkin* Decision, Bankruptcy Code Section 541 provides the framework to determine whether property is "property of the estate." With these concepts in mind, whether the second element of the Trustee's claim is adequately

alleged turns on whether proceeds from the sale of ENSI assets – the Post-Petition Sale Proceeds – are "proceeds" of property of the estate as contemplated by Section 541(a)(6).

It is beyond doubt that where a debtor owns the shares of a corporation, a sale of those shares for cash or other consideration results in "proceeds." In such a transaction, all that has occurred is that property of the estate has changed from one form – shares of stock – to another form – cash or other consideration. But the parties have not cited, and the Court has not found, controlling or persuasive authority to support the Trustee's assertion that in these circumstances, the proceeds of a sale of a non-debtor corporation's *assets* should be afforded the same treatment as the proceeds of a sale of its *shares*.

This is consistent with principles that are long and well established. Courts in New York recognize that there is a difference between ownership of a corporation's shares and ownership of its assets. Long ago, the New York Court of Appeals observed:

> [T]he corporation in respect of corporate property and rights is entirely distinct from the stockholders who are the ultimate or equitable owners of its assets . . . even complete ownership of capital stock does not operate to transfer the title to corporate property and . . . ownership of capital stock is by no means identical with or equivalent to ownership of corporate property.

*Brock v. Poor*, 216 N.Y. 387, 401 (1915).

To similar effect, the Second Circuit found that under New York law, "shareholders do not hold legal title to any of the corporation's assets. Instead, the corporation – the entity itself – is vested with the title." *U.S. v. Wallach*, 935 F.2d 445, 462 (2d Cir. 1991) (*citing* 5A *Fletcher Cyclopedia of the Law of Private Corps*. § 2213, at 323 (Perm. ed. 1990)).

And as Chief Judge Craig noted:

> A corporation has a separate identity from its owners and, therefore, assets held by corporate entities are not property of an individual shareholder's bankruptcy estate . . . Rather, the ownership interest is property of the shareholder's bankruptcy estate.

*Pereira v. Dieffenbacher (In re Dieffenbacher)*, 556 B.R. 79, 85 (Bankr. E.D.N.Y. 2016) (quotation and internal citation omitted).

Applying these principles here, Debtor Brizinova's ownership of *ENSI's shares* does not give her legal title to, or an ownership interest in, *ENSI's assets*, because ENSI has legal title to, and owns, those assets. And if she does not have a "legal or equitable interest[]" in ENSI's assets, then they are not property of her estate under Bankruptcy Code Section 541(a), and the Trustee is not entitled to seek their turnover under Bankruptcy Code Sections 542 and 541(a)(6).

For these reasons, and based on the entire record, the Court concludes that the Trustee does not adequately allege the second element of a claim under Bankruptcy Code Section 542 for turnover of the Post-Petition Sale Proceeds, that the property at issue is property that the Trustee may use under Bankruptcy Code Section 363 as "proceeds of or from property of the estate."

<u>Whether the Trustee Adequately Alleges that the Property at Issue Is of More than Inconsequential Value to the Estate</u>

The third element that the Trustee must allege to state a Section 542(a) claim is that the property at issue is of greater than inconsequential value to the Defendants' bankruptcy estate.

The Defendants argue, in substance, that the Post-Petition Sale Proceeds are of inconsequential value to this bankruptcy estate because they are not property of the estate.

The Trustee responds, in substance, that the Post-Petition Sale Proceeds are property of the estate, and alleges in the Complaint that their value is at least $250,000.

There is no single test to determine whether property is of greater than inconsequential value to a debtor's Chapter 7 estate. One method noted by courts is to compare the amount of claims filed in a debtor's bankruptcy case to the value of the property that the trustee seeks to recover. *Calvin v. Wells Fargo Bank, N.A. (In re Calvin)*, 329 B.R. 589, 598 (Bankr. S.D. Tex. 2005) (concluding that where the value of the property sought to be turned over represented

24

seven percent of all claims, that was "not an insignificant portion" and the property was not of inconsequential value to the estate).  Another is to show that "some method of sale holds a reasonable prospect of a meaningful recovery in excess of" the debtor's exemption in the asset. *In re Burgio*, 441 B.R. 218, 221 (Bankr. W.D.N.Y. 2010).

Here, a review of the Complaint shows that the Trustee alleges, among other things, that the Post-Petition Sale Proceeds are "currently estimated to be not less than $250,000."  Compl. ¶ 17.  And the claims register shows that some $92,000 in unsecured claims have been filed. That is, the Post-Petition Sale Proceeds that the Trustee seeks to recover would be sufficient to pay all of the filed claims in this case.  Under any appropriate measure, the Post-Petition Sale Proceeds are of greater than inconsequential value to the estate.

For these reasons, and based on the entire record, the Court concludes that the Trustee adequately alleges the third element of a claim under Section 542 for turnover of the Post-Petition Sale Proceeds, that the property at issue – if it were property of the estate – has more than inconsequential value to the debtor's estate.

*          *          *

In sum, the Court has carefully considered each of the arguments advanced by the Defendants with respect to whether the Trustee adequately alleges the First Claim for Relief, for turnover of the Post-Petition Sale Proceeds under Bankruptcy Code Section 542(a).  The Court concludes that the Trustee adequately alleges the first element of his claim, that the property is in the possession, custody, or control of another entity.  And the Court concludes that the Trustee adequately alleges the third element of his claim, that the Post-Petition Sale Proceeds would have value to the estate.

But the Court concludes that the Trustee does not adequately allege the second element of his turnover claim, because he does not adequately allege that the Post-Petition Sale Proceeds are property of the estate, and the Trustee is entitled to use only such property.

For these reasons, and based on the entire record, the Defendants' Motion for Judgment on the Trustee's First Claim for Relief, for turnover of the Post-Petition Sale Proceeds, is granted.

*Whether the Defendants Are Entitled to Judgment on the Trustee's Claim for Violation of the Automatic Stay Under Bankruptcy Code Section 362(a)*

The Trustee's Second Claim for Relief seeks a declaratory judgment, an injunction, and actual and punitive damages pursuant to Section 362(a), arising from the Defendants' violations of the automatic stay by "transferr[ing] to one or more third parties subsequent to the Petition Date some or all of the interest in ENSI and some or all of the Post-Petition Sale Proceeds." Compl. ¶ 20. Section 362(a) provides that "a [bankruptcy] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities . . . of any act to . . . exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Actions in violation of the automatic stay may trigger serious consequences, including an award of "actual damages, including costs and attorneys' fees, and, in appropriate circumstances . . . punitive damages." 11 U.S.C. § 362(k). Here again, the Court reviews the claim applying the standards for failure to state a claim. *Ayerst Labs.*, 850 F.2d at 909 n.2.

The Trustee must allege three elements to state a claim based upon a violation of the automatic stay. These are first, that the automatic stay was in effect at the time of the alleged violation; second, that the property at issue was property of the estate; and third, that the conduct in question constitutes a violation of the automatic stay.

<u>Whether the Trustee Adequately Alleges that the Automatic Stay Was In Effect at the Time of
the Alleged Violation</u>

The first element that the Trustee must allege to state a claim based upon a violation of

the automatic stay is that the automatic stay was in effect at the time of the alleged violation.

The Defendants argue, in substance, that the Trustee cannot state a plausible claim for

violation of the automatic stay because the Post-Petition Sale Proceeds are not property of the

estate, but of ENSI.  Because ENSI is not a debtor, there was no stay with respect to that entity,

and if there is no stay, there can be no violation.

The Trustee responds by referring to this Court's ruling in *Brizinova I*, sustaining his stay

violation claim, and asserts that pursuant to the law of the case doctrine, the Motion for

Judgment should be denied.

The starting point for any claim for relief arising from a stay violation is the language of

the Bankruptcy Code.  Section 362(a) provides that a "petition filed under . . . this title . . .

operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the

estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C.

§ 362(a)(3).

The automatic stay "is effective immediately upon the filing of the petition . . . and any

proceedings or actions described in section 362(a)(1) are void and without vitality if they occur

after the automatic stay takes effect."  *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527

(2d Cir. 1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc.* (*In re 48th St.

Steakhouse, Inc.*), 835 F.2d 427, 431 (2d Cir. 1987), *cert. denied,* 485 U.S. 1035 (1988)) (internal

citations omitted).

Here, a review of the Complaint shows that the Trustee alleges, among other things, that

after the Defendants filed their bankruptcy case – and therefore after the automatic stay was in

effect – they continued to operate ENSI, receive proceeds from those operations, and transfer some or all of those proceeds to others.  The Complaint states:

> [T]he Defendants had knowledge that as of the Petition Date, the Trustee, on behalf of the debtor's bankruptcy estate, had become the owner of Brizinova's 100% interest in ENSI and was entitled to a turnover of all Post-Petition Sale Proceeds therefrom, Defendants, upon information and belief, transferred to one or more third parties subsequent to the Petition Date some or all of the interest in ENSI and some or all of the Post-Petition Sale Proceeds.

Compl. ¶ 19.  That is, the Trustee alleges that because of the bankruptcy filing, the automatic stay was in effect when the Defendants took steps to exercise control over and transfer the property at issue, in the form of the Post-Petition Sale Proceeds, after they filed their bankruptcy case, when the automatic stay was in effect.

For these reasons, and based on the entire record, the Court concludes that the Trustee adequately alleges the first element of a claim under Section 362 for a stay violation, that the automatic stay was in effect at the time of the alleged violation.

Whether the Trustee Adequately Alleges that the Property at Issue Was Property of the Estate

The second element that the Trustee must allege to state a claim based upon a violation of the automatic stay is that the property at issue was property of the estate.

Here again, the Defendants argue, in substance, that the Trustee cannot state a plausible claim for violation of the automatic stay because this element requires the Trustee to allege that the property at issue – the Post-Petition Sale Proceeds – is property of the estate, and here, ENSI is not a debtor, and its assets are not estate property.

And here again, the Trustee responds, in substance, that he has adequately alleged this claim for many of the same reasons that he has adequately asserted his Section 542(a) turnover claim, that the Court sustained this claim in *Brizinova I*, and that relevant case law and the law of the case doctrine require this claim again to be sustained.

28

Here, a review of the Complaint shows that the Trustee alleges, among other things, that after the Defendants filed their bankruptcy case, they continued to operate ENSI, receive proceeds from those operations, and transfer some or all of those proceeds to others.  The Complaint states:

> Notwithstanding that the Defendants had knowledge that as of the Petition Date, the Trustee, on behalf of the debtor's bankruptcy estate, had become the owner of Brizinova's 100% interest in ENSI and was entitled to a turnover of all Post-Petition Sale Proceeds therefrom, Defendants, upon information and belief, transferred to one or more third parties subsequent to the Petition Date some or all of the interest in ENSI and some or all of the Post-Petition Sale Proceeds.

Compl. ¶ 19.  That is, the Trustee alleges that after the petition date, the Defendants transferred "some or all of their interest in ENSI and some or all" of the property at issue – the Post-Petition Sale Proceeds – to a third party or parties, and that the Post-Petition Sale Proceeds come from from the operation of ENSI which, in turn, was owned by the Defendants and became estate property upon the filing of the Defendants' bankruptcy case.  *Id.*  But as noted above, and as this Court held in *Soshkin*, the assets of ESNI belong to ENSI, not the Defendants, and are not property of the estate.  And because ENSI is not a debtor, the post-petition transfer of ENSI assets did not violate the automatic stay, because it does not apply to ENSI.

For these reasons, and based on the entire record, the Court concludes that the Trustee does not adequately allege the second element of a claim under Section 362 for a stay violation, that the property at issue was property of the estate.

<u>Whether the Trustee Adequately Alleges that the Conduct in Question Violates the Automatic Stay</u>

The third element that the Trustee must allege to state a claim based upon a violation of the automatic stay is that the conduct in question violates the automatic stay.

The Defendants similarly argue, in substance, that the Trustee cannot state a plausible claim for violation of the automatic stay because ENSI is not a debtor.

The Trustee similarly responds, in substance, that he adequately alleges this claim for many of the same reasons that he adequately asserts his Section 542(a) turnover claim, and that the Complaint adequately identifies conduct, including retention and transfers of the Post-Petition Sale Proceeds, that violates the automatic stay.

Here, a review of the Complaint shows that the Trustee alleges, among other things, that after the Defendants filed their bankruptcy case, they continued to operate ENSI, receive proceeds from those operations, and transfer some or all of those proceeds to others.  The Complaint states:

> [T]he Defendants had knowledge that as of the Petition Date, the Trustee, on behalf of the debtor's bankruptcy estate, had become the owner of Brizinova's 100% interest in ENSI and was entitled to a turnover of all Post-Petition Sale Proceeds therefrom, Defendants, upon information and belief, transferred to one or more third parties subsequent to the Petition Date some or all of the interest in ENSI and some or all of the Post-Petition Sale Proceeds.

Compl. ¶ 19.  That is, the Trustee alleges that the Defendants have retained or transferred property that is property of the estate, and as such, that they have exercised control over property of the estate, in violation of Section 362(a)(3).  But here too, because ENSI is not a debtor, and because the Trustee does not adequately allege that the Post-Petition Sale Proceeds are "proceeds of or from property of the estate," he does not adequately allege the third element of his claim under Bankruptcy Code Section 362 for a stay violation, that the conduct in question violates the automatic stay, because actions with respect to property that is not property of the estate simply do not violate the automatic stay.

*          *          *

In sum, the Court has carefully considered each of the arguments advanced by the Defendants with respect to whether the Trustee adequately alleges the Second Claim for Relief, for a declaratory judgment that they violated the automatic stay, an order enforcing the stay and

enjoining further transfers of the Post-Petition Sale Proceeds, damages in the amount of at least $250,000, plus interest.  The Court concludes that the Trustee adequately alleges the first element of his stay violation claim, that the automatic stay was in effect at the time of the alleged violation.  But the Trustee does not adequately allege the second element of this claim, that the property at issue was property of the estate, or the third element of this claim, that the conduct in question violates the automatic stay.

For these reasons, and based on the entire record, the Defendants' Motion for Judgment on the Trustee's Second Claim for Relief, for violations of the automatic stay, is granted.

_Whether the Defendants Are Entitled to Judgment on the Trustee's Claim for Conversion_

The Trustee's Third Claim for Relief is for conversion of estate property under New York common law.  By this claim, the Trustee seeks to recover "the estate's 100% interest in ENSI and in the Post-Petition Sale Proceeds" from the Defendants.  Compl. ¶ 23.[2]  And here too, the Court looks to the standards for whether a plausible claim for relief is stated.  _Ayerst Labs._, 850 F.2d at 909 n.2.

The Trustee must allege two elements to state a conversion claim under New York law.  These are:  "first . . . legal ownership or an immediate superior right of possession to a specific identifiable thing (i.e., specific money); and, second . . . that the defendant exercised unauthorized dominion over the thing in question, to the exclusion of the plaintiff's rights."  _AMF Inc. v. Algo Distribs., Ltd._, 48 A.D.2d 352, 356-57 (N.Y. App. Div. 2d Dep't 1975) (citation omitted).

---

[2]  At the argument held before this Court on September 17, 2018, the Trustee withdrew his claim for conversion with respect to the ENSI shares.  Transcript of Record at 8:21-9:3, _Geltzer v. Brizinova_, Case No. 15-01073 (Sept. 17, 2018) (ECF No. 125) ("The Court:  . . .  In the context of . . . Geltzer versus Brizinova, adversary proceeding, 15-1073, does the trustee withdraw his claim for conversion with respect to the [ENSI] shares?; Mr. Wolf: Yes.").

<u>Whether the Trustee Adequately Alleges that the Estate Had Title to a Specific Identifiable
Thing or a Right to Its Possession</u>

The first element that the Trustee must allege to state a conversion claim is that the estate

had legal ownership of, or a right to possess, a specific identifiable thing, here, the Post-Petition

Sale Proceeds.  This element has two parts:  a plaintiff must allege (1) title or a right to possess

(2) a specifically identifiable thing.

Here too, the Defendants argue that this element cannot be satisfied with respect to the

Post-Petition Sale Proceeds because the proceeds from the sale of ENSI assets are not property

of the estate, and so the Trustee cannot allege that he had title or a right to possess them.

And here too, the Trustee responds that based on this Court's holdings in *Brizinova I*,

applicable case law, and the law of the case doctrine, he adequately alleges a claim for

conversion of the Post-Petition Sale Proceeds.

It is plain that "in a Chapter 7 bankruptcy, a trustee has the general duties of gathering the

estate assets, liquidating them, distributing the proceeds to creditors, and closing the estate."  *In

re Smith*, 426 B.R. 435, 440-41 (E.D.N.Y. 2010) (citing *United States v. Shadduck*, 112 F.3d

523, 531 (1st Cir. 1997)), *aff'd*, 645 F.3d 186 (2d Cir. 2011).  And as this Court has previously

stated, "[t]he Bankruptcy Code provides tools for trustees to marshal the assets of an estate."  *In

re Khan*, 2014 WL 4956676, at *22.  But first, the property at issue must be property of the

estate.

For the reasons stated above and in the *Soshkin* Decision, although the ENSI *shares* are

property of the estate, the ENSI *assets*, including the Post-Petition Sale Proceeds, are property of

ENSI, and not property of the estate.  And for the same reasons that the Trustee does not

adequately allege that the Post-Petition Sale Proceeds are "proceeds of or from property of the

estate," he also does not adequately allege that he had title or a right to possess the Post-Petition

Sale Proceeds.

For these reasons, and based on the entire record, the Court concludes that the Trustee

does not adequately allege the first element of his conversion claim, that the Trustee had title to

or a right to possess the Post-Petition Sale Proceeds.

<u>Whether the Trustee Adequately Alleges that the Defendants Converted Specifically Identifiable
Estate Property</u>

The second element that the Trustee must allege to state a conversion claim under New

York law is that the Defendants converted specifically identifiable property.

As with the first element of this claim, the Defendants argue, in substance, that it is not

adequately pleaded with respect to the Post-Petition Sale Proceeds because this property does not

exist in the form of a potential asset of the estate, so that it cannot amount to specifically

identified property sufficient to satisfy this element of a conversion claim.

And similarly, the Trustee responds that for the reasons stated in *Brizinova I*, applicable

case law, and the law of the case doctrine, his allegations with respect to this element are

adequate.

Under New York law, "it is well-settled . . . that an action for the conversion of monies is

'insufficient as a matter of law unless it is alleged that the money converted was in specific

tangible funds of which the claimant was the owner and entitled to immediate possession.'" *In

re Musicland Holding Corp.*, 386 B.R. 428, 440 (S.D.N.Y. 2008) (quoting *Ehrlich v. Howe,* 848

F. Supp. 482, 492 (S.D.N.Y. 1994)), *aff'd*, 318 F. App'x 36 (2d Cir. 2009). As one court

explained, "the money must be 'described or identified in the same manner as a specific

chattel.'" *Glob. View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*, 288 F. Supp. 2d

473, 480 (S.D.N.Y. 2003). Dismissal may be appropriate where the funds at issue were not "a

specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 124 (N.Y. App. Div. 1st Dep't 1990). *See, e.g., Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc*., 981 F. Supp. 2d 153, 164 (E.D.N.Y. 2013) (finding that funds intended for the claimant but directed to the defendant were not sufficiently identifiable, could not "be distinguished as [a] specific chattel," and could not be recovered in a conversion action).

A review of the Complaint shows that the Trustee alleges that the Defendants converted "the estate's . . . interest . . . in the Post-Petition Sale Proceeds . . . in an amount to be determined at trial, currently estimated to be not less than $250,000." Compl. ¶¶ 23, 24. But here too, for the reasons stated above and in the *Soshkin* Decision, because the Post-Petition Sale Proceeds are assets of ENSI, and not assets of the Debtors, those proceeds are not property of the estate.

For these reasons, and based on the entire record, the Court concludes that the Trustee does not adequately allege the second element of his conversion claim, that the Defendants converted specifically identified property of the estate, because the Post-Petition Sale Proceeds are property of ENSI, and not property of the estate.

*                    *                    *

In sum, the Court has carefully considered each of the arguments advanced by the Defendants with respect to whether the Trustee adequately alleges the Third Claim for Relief, for conversion. The Court concludes that the Trustee does not adequately allege the first element of his conversion claim, that he had title to or a right to possess the Post-Petition Sale Proceeds. The Court also concludes that the Trustee does not adequately allege the second element of his conversion claim, that the Defendants converted specifically identified estate property.

For these reasons, and based on the entire record, the Defendants' Motion for Judgment on the Trustee's Third Claim for Relief, for conversion of the Post-Petition Sale Proceeds, is granted.

## Conclusion

The Court concludes that with respect to the Trustee's First Claim for Relief, for turnover pursuant to Section 542(a), the Defendants have shown that the Trustee has not adequately alleged the necessary elements of a turnover claim under Bankruptcy Code Section 542(a). Therefore, the Motion for Judgment is granted as to this claim.

The Court concludes that with respect to the Trustee's Second Claim for Relief, for violation of the automatic stay pursuant to Section 362(a), the Defendants have shown that the Trustee has not adequately alleged the necessary elements of a claim under Bankruptcy Code Section 362(a). Therefore, the Motion for Judgment is granted as to this claim.

The Court concludes that with respect to the Trustee's Third Claim for Relief, for conversion of the Post-Petition Sale Proceeds, the Defendants also have met their burden to show that the Trustee has not adequately alleged the necessary elements of a conversion claim with respect to those proceeds. Therefore, the Motion for Judgment is granted as to this claim as well.

An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
      **September 26, 2018**

            **Elizabeth S. Stong**
        **United States Bankruptcy Judge**